# COSTINETT *v.* PLAZA HOTEL COMPANY.

APPEAL AND ERROR; CONCLUSIVENESS OF VERDICT; DAMAGES; EXPERT TESTIMONY; SUBMISSION TO JURY.

1. A verdict cannot be reversed on appeal, when based on conflicting evidence which was submitted to the jury under instructions requested by both parties.

2. For the purpose of fixing the damages for breach of a lessor's contract to construct a new building, the value of its use is determined, not exclusively by the amount which the lessee agreed to pay, but by its probable future rental value, and the measure of damages is the difference between the rental value reserved in the lease and the reasonable value of the use and occupation of the premises for the remaining term of the lease.

3. Testimony as to the probable rental value of a proposed hotel and barroom is competent when it consists of the opinions of witnesses, a majority of whom are real estate brokers, more or less familiar with building values in the vicinity, one of them being the keeper of a small hotel and barroom within three squares of the premises, and the others having had opportunities to know the rental values of similar premises; and such testimony is not rendered incompetent by the fact that none of them has acted as agent for hotel property in the vicinity, especially when there have been no hotels located there.

4. The fact that, in arriving at the reasonable value of the future use of a proposed building, all the witnesses but one considered the profitableness of the business to be carried on, whereas the court instructed the jury to disregard testimony tending to show that the business would be profitable, does not require the verdict to be disturbed upon objection by the defendant, where the future value fixed by the verdict is the same as the lowest estimate of any witness, and is less than the estimate of the witness who did not consider the question of profitableness, and is but two thirds of the rental demanded by the defendant as a condition to his erection of the building.

No. 2522.   Submitted October 15, 1913.   Decided November 3, 1913.

HEARING on an appeal by the defendants from a judgment, on verdict, on the Supreme Court of the District of Columbia in an action brought to recover damages for breach of contract. *Affirmed.*

The COURT in the opinion stated the facts as follows:

Plaza Hotel Company brought this action against John J. and Joseph R. Costinett, appellants, to recover damages for breach of contract; and recovered a judgment for the sum of $6,000.

The declaration alleged that defendants, who are the owners of premises known as No. 600 North Capitol street, and Nos. 1 and 3 F street, N. W., in the city of Washington, leased the same to plaintiff for the term of eight years and six months from February 1, 1906, for use as a barroom, at a monthly rental of $120.

That said lease contained the following covenant: "If, at any time during the continuance of this lease, the grade of North Capitol street, or the grade of F street, or the grade of Massachusetts Avenue, where they pass said premises, shall be changed, then, in such case, the parties of the first part agree, upon the request of the party of the second part, to erect upon the premises aforesaid, No. 600 North Capitol street, and Nos. 1 and 3 F street, Northwest, a new building according to plans and specifications to be hereafter agreed upon between the parties to this lease, and from and after the date of the completion of said new building, the party of the second part agrees to pay to the parties of the first part during the unexpired portion of said term of eight years and six months, in lieu of the rent hereinbefore provided, the sum of one hundred and fifty dollars ($150) per month as rent, and also an additional amount, that is to say, a sum of money equal to 6 per cent (6%) on the amount of money expended in the erection and completion of said new building. Said 6 per cent on said expenditure to be divided into twelve equal instalments, one of which shall be payable monthly in addition to the one hundred and fifty dollars ($150) rent hereinbefore agreed to be paid."

That the grades of said streets were changed during the continuance of the lease, and on April 18, 1907, plaintiff requested defendants to erect the said building, and plans and specifications therefor were prepared between April 18 and August 1, 1908. That the said plans were accepted and agreed upon by plaintiff and defendants, but the defendants refused to erect said building unless plaintiff would agree to pay a greater rental than that provided for in said lease.

That, finally, the plans and specifications for a building containing thirty-nine rooms were submitted and agreed upon, but the said agreement was repudiated by defendants on August 15, 1908.

That plaintiff, pursuant to the requirements of the lease, demanded the erection of said building, but defendants have refused to erect the same, and have required plaintiff to con-

tinue to pay said sum of $120 per month for premises which have become worthless for any use.

That plaintiff has been deprived of the use of said building, which would have been of great value to plaintiff as a hotel and barroom, to its damage $50,000.

Defendants pleaded, among other defenses, that plaintiff agreed with defendants, in consideration of the erection of said building, to pay them an increased rental of $500 per month; that defendants were able, ready, and willing to erect said building, but plaintiff refused to enter into a written contract to pay said increased rental.

By stipulation the record has been amended showing that the pleas to the amended declaration upon which the cause was tried were that defendants have performed the covenants of said lease; and that they had not agreed upon plans for the erection of said building.

Plaintiff's evidence tended to show that plans and specifications for the building had been presented to and agreed upon by defendants in July, 1908.

That the cost of said erection would be $30,000. That the said premises were near the Union Station.

The plaintiff offered the witnesses Costello, William D. and John D. Sullivan, Engle, Pillsbury, MacLennon, Dugan, and Richards to prove the rental value of the contemplated building, during the remainder of the term of said lease. Costello was a lawyer, publisher, and real estate broker, and "had some experience in rental values and values of hotel and saloon properties." He testified that the fair rental value of such a building at such a place would be $500 to $1,000 per month. William D. Sullivan, a real estate broker for nineteen years, estimated the rental value at $800 per month. John D. Sullivan, real estate broker for twenty-three years, and had experience in renting small properties near the Union Station, estimated the rental value at $6,500 or $7,000 per year. Engle, for eleven years lessee and manager of a hotel of twenty-two bedrooms three squares south of the premises in question, estimated the rental value at $500 per month the first three years, and after

that $100 per month additional. Pillsbury, a real estate broker for ten years, and familiar with values in the neighborhood, estimated the fair rental value at $6,500 to $7,000 per year. MacLennon, in the hotel business in Washington six years, estimated the fair rental value per year at $7,000 or $8,000. Dugan, a real estate broker making a specialty of the sale of hotels and saloons, estimated the value at from $7,000 to $7,500 per year. Richards, president of plaintiff corporation and wholesale dealer in liquors, whose business had led him to know the rentals of his customers, and who thought himself familiar with the value of the rentals of small hotel properties, estimated the rental value at $7,000 per year.

Defendants offered evidence tending to show that they never agreed to the plans and specifications of the building, and that they would not agree to the same unless plaintiff should pay a rental, different from that in the lease named, and amounting to $600 per month. And, further, that defendants had offered the premises to plaintiff in 1908 for sale at $30,000, which offer plaintiff declined; and that rentals usually obtained from business properties in Washington are between 5 and 6 per cent of value after deducting taxes and other charges payable by the landlord, such charges being generally not more than 1½ per cent.

The court gave two instructions asked by the plaintiff, the first submitting the issue of fact as to the agreement upon the plans and specifications. The second is as follows: "2. If the jury finds from all the evidence that the plaintiff is entitled to recover, then they shall award it, as damages, such sum as they may find from all the evidence would equal the difference between the amount of rental stipulated in the lease and the rental value of the said premises after the erection of the improvements provided for in the plans and specifications agreed upon between the plaintiff and the defendants, if they find that such plans and specifications were agreed upon. Such difference between the rent reserved in the lease and the rental value of the premises as improved aforesaid, to be estimated from the time when said improvements might reasonably have been com-

pleted after the date of agreement upon said plans and specifications, to the end of the lease."

The court gave three special instructions at request of defendants to the effect, first, that plaintiff could not recover unless the jury found that the parties had agreed upon the plans and specifications; second, that the defendants are entitled to a verdict if the jury finds that the plans and specifications had not been agreed to under the conditions of the lease, but upon condition that a fixed monthly sum should be paid in addition to the $150 reserved in the lease, instead of the percentage of cost; third, that, in considering the value of rent, had a building been erected, the jury should reject all testimony tending to prove that the business to be carried on would be profitable. Another instruction, as follows, was refused: "2. The jury are instructed that, under the declaration and the evidence in this case, the plaintiff is not entitled to recover more than nominal damages, and if they so find for the plaintiff, the damages so awarded should not exceed $1.00."

Defendants excepted to the refusal of the foregoing, and to the grant of the second instruction of the plaintiff.

The general charge stated the measure of damage in the following words: "You would then be concerned in understanding the measure appropriate to be adopted for an ascertainment of the damage to which the plaintiff is entitled. In general terms the object of the law in awarding damages for a breach of contract is to put the injured party in the same position, so far as money can, that he would have been in had the contract been carried out. Now, what position would these plaintiffs have been in if this building had been erected? They would have been in a position which would have entitled them to the use of that building for the balance of the term of the lease. The value of the use of the building is its rental value. Therefore, if the other elements necessary to their recovery are established by the evidence, the measure of their damages is the value of the use of what they were entitled to under the contract; that is to say, the rental value of the building shown on the plans and specifications, less whatever they must have paid

for rent under the lease. The lease provides that, after the erection of the new building, they must have paid $150 per month, or $1,800 a year, together with 6 per cent on the amount of money expended in the erection and completion of the new building. Before you can find how much 6 per cent on the amount of money necessary to the erection and completion of the new building amounts to, you must determine from this evidence, if you can, what would have been the fair and reasonable cost of the erection of such a building, such as these plans and specifications show. After you have determined from the evidence the reasonable cost of the erection of the building, then 6 per cent on that sum is a mere matter of computation, and that 6 per cent added to the $1,800 a year additional, which the plaintiff must have paid as rent, will show you the sum that they must have paid per year in order to entitle themselves to the new building. When you subtract that total sum from the rental value of that building, after you ascertain it from the evidence, that will give you the measure of damages for each year that these plaintiffs were entitled to during the remainder of the lease. That question, "during the remainder of the lease," must be determined by these considerations: You must find from the evidence, if they agreed at all on plans and specifications, when that was, as near as you can, what date, because this lease itself shows when it expired, and after you find the date that they agreed on, if they did agree on plans and specifications, then the defendant would have been entitled to a reasonable time after that to build this building, as long as you think it would reasonably have taken; and the damages should be estimated from the time at which they, by the exercise of reasonable diligence, could have completed the building, to the end of the lease. If, however, you find from the evidence that the plaintiff and the defendant did not make an unconditional agreement that these should be the plans and specifications, that must end the case in favor of the defendant; because then it would leave a situation under which the prerequisite that this lease itself establishes as necessary to the obligation of the

defendant to erect the building never happened." Defendants excepted to this also.

The defendants also excepted to the testimony of the witnesses to the rental value of the premises, on the ground that they had not shown themselves to be experts in hotel rentals; and further that damages could not be proved in this way. One of the witnesses, on cross-examination, said that he had never rented a building for hotel purposes in that locality; that he did not know the rental value per room in hotels; that he did not hold himself out as an expert in hotel rentals, and did not intend to qualify as such; that his experience extended only to buying and selling and offering for sale small hotels and bar-rooms, and bases his estimate of value of the premises upon his supposition of the extent of the business which might have been done there; adding: "Of course, there is no hotel there now, and it must be based upon supposition." Exception was taken to the refusal of a motion to strike out the testimony. Each witness testified on cross-examination that he figured upon what could reasonably be made out of the bar trade and rental of rooms; that the location would have much to do with the extent of the business; and that one man of objectionable personality or lack of business knowledge would make a loss where another man would make a success.

*Mr. Arthur A. Birney* and *Mr. Henry F. Woodard* for the appellants.

*Mr. George F. Havell* and *Mr. Michael J. Colbert* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

1. It is conceded that the issue as to the preparation of plans and specifications for the new building, and the agreement thereto by defendants without the condition for additional

rental, as claimed by them, has been settled by the verdict. Those issues were submitted to the jury fairly upon the in-structions asked by both plaintiff and defendants, and the ver-dict upon a conflict of evidence relating thereto is conclusive.

2. There was no error in refusing the second instruction proposed by the defendants, to the effect that the plaintiff is not entitled to recover more than nominal damages for the breach of the covenant. The rent reserved in the contract was not determinable of the actual value; it could be no more than an element in the proof. If it was less than the reasonable actual value of the use of the premises, plaintiff was entitled to the advantage of his contract. The charge embodied this prin-ciple. It instructed the jury that the measure of actual dam-age was the difference between the reasonable rental value of the premises and the value reserved in the lease, if the former had been shown by the evidence to be greater than the latter.

3. There was no error in permitting the witnesses Costello and others, to testify as to the reasonable rental value of the building, had the same been erected as agreed upon.

The majority of them were real estate brokers, more or less familiar with land and building values in that vicinity. One was a keeper of a small hotel and barroom within three squares of the premises; others had opportunities to know the rental values of similar premises. The values of land and its use and occupation are ordinarily difficult of certain ascertainment, and rest on the opinions of witnesses who may have had reasonable opportunity for their formation.

To say, as contended, that the testimony was incompetent because "none of the witnesses had been agent for a hotel in the vicinity of this locality, for it was barren of hotels," would be to permit the violations of such contracts with impunity. The testimony was competent, and it was for the jury to deter-mine the credibility of the witnesses and the weight of the evi-dence of each, and to assess the damages.

4. The charge of the court; it will be remembered, directed the jury that the measure of damages was the difference be-tween the rent reserved in the contract, and the reasonable value

of the use and occupation of the premises for the remaining term of the lease. At the request of the defendants, the court charged the jury that, in considering such value, they should reject all the testimony tending to prove that the business to be carried on would be profitable. The witnesses were limited in their direct examination to the reasonable rental value of the premises, and the question of probable loss of profits by the breach of the contract was not gone into. In cross-examining the witnesses, the defendants brought out the fact that, in considering the rental value, they took into consideration the business that ought to be done in such premises, and the fact that it ought to be a profitable one under competent management. Only one was re-examined, and he said that, "independently of what profits could be made out of it, who would rent it, etc., there ought to be no difficulty in renting it in the market for $6,500 or $7,000 per year."

Moreover, defendants' testimony showed that their refusal to erect the building was because plaintiff refused to accede to their demand for an increased rental of $600 per month for the first year, and an increased amount per month during each subsequent year.

Giving a reasonable time for the construction of the building after agreement upon the plans, there would remain about six years of the lease. Under the contract plaintiff would have been required to pay $3,600 per year for that period. The defendants had demanded $7,200 per year as a condition of building. The average rental value estimated by plaintiff's witnesses was about $6,500 per year; the lowest estimate being $4,800. This was submitted to the jury, who, in weighing it, were expressly charged to exclude all evidence tending to prove that the business would be profitable. The stipulated rental was $3,600; the jury found its actual rental value to be in accord with the lowest estimate of plaintiff's witnesses, namely, $4,800.

There is no foundation for defendants' assignments of error. For the reasons given the judgment is affirmed with costs.

*Affirmed.*