**332**

**PEOPLES MORTG. CORPORATION et al.**
**v. BEDROSIAN et al.**

No. 9052.

United States Court of Appeals
District of Columbia.

Argued Jan. 16, 1946.

Decided April 8, 1946.

Mr. Jacob N. Halper, of Washington, D. C., for appellants.

Mr. Phillip W. Austin, of Washington, D. C., for appellées.

Before CLARK, WILBUR K. MILLER, and PRETTYMAN, Associate Justices.

WILBUR K. MILLER, Associate Justice.

By this appeal the appellants, Peoples Mortgage Corporation, Simon S. Freedman and Sallye Gerstein, complain of a judgment entered against them in the District Court of the United States for the District of Columbia pursuant to a verdict for $10,000 in favor of the appellees, Charles Bedrosian, Vahan Garabedian and Jake Nalbandian. The action was for damages for breach of a lease contract by the lessor, Peoples Mortgage Corporation.

The transcript of the proceedings in the District Court is so garbled and confused that it is difficult to obtain a clear conception of what actually happened at the trial.

This much is clear: the plaintiffs[1] averred in their complaint that on January 30, 1941, they entered into a lease contract with the defendant, Peoples Mortgage Corporation, by which they leased from that company a small hotel in the District of Columbia for a term of ten years, to begin on March 1, 1941, at a rental of $315 per month. The plaintiffs paid to the defendant corporation the sum of $2,000 as a bonus for the lease, and also paid the sum of $315 as rent for the month of March, 1941. It is alleged in the complaint that the defendant Freedman was the president of Peoples Mortgage Corporation and the owner of virtually all of its capital stock; that the defendant Berman was secretary of the company and the owner of a few shares of its stock; and that the defendant Gerstein was vice president. The plaintiffs alleged that Freedman falsely and fraudulently represented that he was the owner of the hotel and had authority to rent it, but that in fact none of the defendants ever had title to the premises.

---

[1] The parties will be referred to hereinafter as they were designated in the lower court.

The plaintiffs prayed judgment for $144,315, made up of an anticipated profit of $1,200 per month throughout the ten-year term to which the lease entitled them, and the sum of $315 paid in advance for the rent for the first month. No reference is made in the complaint to the bonus of $2,000, and the evidence shows that that sum was demanded by and returned to the plaintiffs before the suit was filed. A continuing tender of $315 to refund the first month's rent was made by the defendants but refused by the plaintiffs. The lower court directed a verdict for the defendant Berman but allowed the case to go to the jury as to the defendants Peoples Mortgage Corporation, Freedman and Gerstein. A verdict of $10,000 was returned against all three of those defendants.

It appears that the building in question was a part of the estate of the defunct District National Bank and was being offered for sale by its receiver, one Wardell. Either late in 1940 or early in 1941, Peoples Mortgage Corporation submitted to the receiver an offer to purchase the building and made a cash payment of $1,000. The receiver, being quite anxious to complete the sale, endeavored to assist Peoples Mortgage Corporation to obtain a mortgage loan from the Reconstruction Finance Corporation, and went to the length of sending one of his employees with Freedman to the Richmond office of RFC for that purpose. Apparently at the request of RFC, although this does not clearly appear, it was decided to submit the purchase offer to the receiver in the name of the defendant, Gerstein, so that Peoples Mortgage Corporation could endorse the mortgage to RFC when that agency made the loan. But RFC, being dissatisfied with the appraisement of the property, refused to lend as large a sum as that required by Peoples Mortgage Corporation.

Freedman then visited a number of other lending agencies in an effort to obtain the requisite loan, but without success. Finally Peoples Mortgage Corporation forfeited to the receiver the payment of $1,000 which it had made, and thus lost the chance to get the hotel property. Consequently it was unable ever to give the plaintiffs possession of the premises as it had obligated itself by the lease to do.

The proof of the plaintiffs as to their damages was this: they estimated that throughout the term of the lease they would have had a gross income of approximately $2.50 per day for each of the 33 rooms in the hotel; they then estimated what their expense would have been for laundry, janitor service, coal, supplies and rent, and concluded, apparently, that they would have enjoyed a net annual income of about $4,000. At best these estimates, as reflected in the record, were vague and speculative. It will be observed that the final estimate is much lower than the damages alleged in the complaint. No evidence was introduced as to the fair market value of the lease.

 In this jurisdiction, the measure of damage in a case such as this is the difference between the fair market value of the lease and the rental reserved therein,[2] plus any sums paid by the lessee to the lessor. We regard that as a sound criterion by which to ascertain the damage sustained by a lessee who is completely deprived, by the fault of the lessor, of enjoying any part of the term to which his lease entitled him. In charging the jury, the lower court did not instruct as to this or any measure of damage, but simply said, " * * * if you further find that the plaintiffs suffered damages because of their failure to obtain the possession and the use of the premises, you should fix the amount of the damages." Because of the failure to instruct on the proper measure of damage, the judgment must be reversed. If the case is tried again, the jury should be told how to measure the damages, if any be found, and also should be instructed to credit any damages found by the sum of $2,000 which was repaid by the appellant from the consideration received by him. On the question of damages, the testimony should be confined to subjects relevant under the measure thereof to which we have given approval.

 The fact that Freedman owned most of the capital stock of the defendant corporation cannot be said to make him personally liable for its contractual obligation, in the absence of any fraudulent or deceptive use of the corporate entity by him to evade a liability which was justly his.[3] The use of Gerstein's name as the

---

[2] Costinette v. Plaza Hotel Co., 41 App. D.C. 80.

[3] Eichelberger v. Arlington Building, 52 App.D.C. 23, 280 F. 997; Jones v. Helvering, 63 App.D.C. 204, 71 F.2d 214.

offeror to the receiver, when Peoples Mortgage Corporation was in reality to be the purchaser and was in fact the lessor, was not enough to fix liability on Gerstein for any damages sustained by the plaintiffs when the lessor became unable to put the plaintiffs in possession under the lease.

We conclude, therefore, that the evidence afforded no basis for submitting the case to the jury as to any of the individual defendants; and that, there being no proper proof as to the damages alleged to have been sustained by the plaintiffs, there was no basis for submitting to the jury the case against the corporate defendant. The judgment of the lower court is reversed and the cause is remanded for a new trial.

Reversed.