**THOMPSON et al. v. RECTOR et al.**

No. 9648.

United States Court of Appeals District of Columbia Circuit.

Argued May 6, 1948.

Decided Sept. 13, 1948.

Mr. John P. Labofish, of Washington, D. C., with whom Mr. Leon L. Sclawy, of Washington, D. C., was on the brief, for appellants.

Mr. Francis J. Kelly, of Washington, D. C., for appellees Young and Pastor.

Mr. Robert H. Driskill, of Washington, D. C., with whom Mr. Harry S. Boteler, Jr., and Miss Charlotte Maskey, both of Washington, D. C., were on the brief, for appellees Rector, Cramer and Geddes.

Before EDGERTON, PRETTYMAN, and PROCTOR, Circuit Judges.

PROCTOR, Circuit Judge.

Appellees were owners of a business known as the Powell Hotel. On February 7, 1946, appellants made a deposit on purchase of the business, with furniture, equipment, leases, etc. A "memorandum of sale" was signed. On February 27, 1946, another agreement was signed and sealed. Coincident therewith settlement was made. Appellants took possession and assumed control. The final agreement provided for sale of " * * * the rooming and boarding house business and restaurant business * * *," etc.; also, "The parties of the first part guarantee that any necessary licenses for the operation of said rooming and boarding house and/or restaurant business shall be secured and transferred to the parties of the second part." The consideration of $35,000 was covered by assuming an existing chattel mortgage; payment of $5,000 cash, and delivery of promissory notes of $9,500 and $3,500 secured by chattel deed of trust. After paying three monthly instalments on the note of $9,500, appellants ceased payments for failure of appellees to secure and transfer a restaurant license. Appellees then filed suit in the District Court for appointment of a trustee under

the chattel trust; inclusion therein of leases to the business premises, and appointment of a receiver pending foreclosure. Appellants joined Young and Pastor, brokers, as third party defendants. By answer and counterclaim appellants set up: 1. Failure of appellees to secure and transfer a restaurant license (alleging it to be unobtainable without repairs and alterations to the premises prescribed by Municipal authorities). 2. Loss of income for failure to have the license. 3. Fraudulent representations as to income, etc., inducing the purchase. One of several items of damage claimed was $8,000, estimated cost of making the requisite improvements. This appeal is now limited by appellants to errors assigned with reference to this claim. Therefore, we confine our consideration to that subject only.

After trial the court found that defendants " * * * had opportunity to investigate and were prepared to take what was there without reliance on anyone * * * "; also that there was no evidence to justify findings against plaintiffs or third party defendants.. Accordingly, the counterclaim was denied; the complaint against third party defendants was dismissed; the chattel trust was reformed by inclusion of the leases, and a trustee was appointed.

We discover nothing in the record to justify the finding that defendants were prepared to take what was there. We must hold the finding to be erroneous. True, the evidence was conflicting as to matters concerning the license prior to the final agreement of February 27. But whatever happened, the so-called "guarantee" of that date to secure and transfer a restaurant license superseded any earlier understanding, if such there was. It bound the sellers in unmistakable terms, and cannot now be disregarded without violence to the rule against varying the terms of a written instrument by parol evidence. The fact remains that appellees did assume an obligation to procure the license. They failed to do so. Now, as the record stands, they are liable for that default.

Although alternative claims were stated, appellants here stand on the single claim for $8,000, estimated to be the cost of improvements to qualify the premises for a restaurant license. This the court ruled was not the proper standard. It held the only measure applicable to the situation was " * * * the difference between the value of the bargain with the license and the value of the same bargain without the license. * * * " But that overlooks the object and intent of the transaction, which clearly contemplated in part the purchase and sale of a restaurant business *to be carried on by the purchasers*. It ignores the fact that settlement was made upon the express assurance that the license would be procured for the purchasers, and that it could have been procured if the premises had been in fit condition for the conduct of such a business. In addition, there were actual transfer and surrender of the property; fulfillment of the purchase terms, with the buyers assuming conduct of the business. Nothing remained except performance of the covenant to provide a restaurant license. The sellers had not defaulted in the sale itself. They had failed in a single obligation performable after the transfer. That obligation was a moving consideration for the purchase. In these circumstances, and under the express terms of the agreement, the transaction may be likened to the sale of a chattel which the vendor knows to be bought for a particular purpose. There a warranty arises that the property is fit for that purpose. Davenport Ladder Co. v. Edward Hines Lumber Co., 8 Cir., 43 F. 2d 63; Hercules Powder Co. v. Rich, 8 Cir., 3 F.2d 12. Here the transaction included assignment of leases to the buildings in which the business was conducted; sale of a *restaurant business* and the "guarantee" of a license therefor—all pointing to assurance that the premises were in fit condition for that business.

Upon this state of facts we think the learned trial judge erred in his rulings as to the proper measure of damage. The result was to frustrate the efforts of appellants' counsel to prove the condition of the premises intended for the restaurant; the repairs and alterations required by Municipal authorities to qualify the same for a restaurant license, and the reasonable cost of such improvements. In our opinion that is the correct method of ascertaining the damage, and is best suited to do full and

equal justice to both parties. Stillwell & Bierce Mfg. Co. v. Phelps, 130 U.S. 520, 527, 9 S.Ct. 601, 32 L.Ed. 1035. When and if properly proven, the amount which may be found by the court should be set off against the indebtedness represented by the deferred purchase notes.

The rule applied by the trial judge is not an invariable standard. Under a breach of contract, whether of warranty or otherwise, a defendant is liable for such damages as are the natural consequence and proximate result of his conduct. Fries, Beall & Sharp Co. v. Livingstone, 56 App. D.C. 209, 210, 12 F.2d 150. The consideration paid is not the measure of damages for breach of a covenant; rather is it the value of the benefit contracted for. Commercial Inv. Co. v. National Bank of Commerce, 36 Wash. 287, 78 P. 910, 912; Hoffer Oil Corp. v. Carpenter, 10 Cir., 34 F.2d 589, 591.

The case will be remanded for retrial of the single counterclaim of appellants for $8,000 for costs of repairs and alterations required to put the premises in condition to obtain a license. In this particular the judgment is reversed. In all other respects it will stand affirmed.

Affirmed in part; reversed in part, and remanded for action in accordance with this opinion.