## HIMMELSTEIN v. BUDNER.
### Civ. A. No. 21–49.

United States District Court
District of Columbia.
Nov. 16, 1950.

Mark P. Friedlander, Washington, D. C., for plaintiff.

Arthur J. Hilland and DeWitt S. Hyde, Washington, D. C., for defendant.

KEECH, District Judge.

This is an action for breach of contract. The plaintiff claims damages in the amount of $4,680.51 arising from defendant's breach of an implied warranty under an agreement to sell plaintiff a dry-cleaning business. The defendant filed a counterclaim asking return of certain items of his personal property detained by the plaintiff, or their value of $600, plus $100 damages for their detention. The defendant also filed a supplemental counterclaim for the sum of $2700.50, representing obligations of the defendant assumed by plaintiff on purchase of the dry-cleaning business, but remaining unpaid.

I find the following facts have been established by the evidence:

On July 1, 1948, the plaintiff entered into a written contract for purchase of defendant's dry-cleaning business at 4013 South Capitol Street, Paragraph 6 of which provided: "The Seller agrees to obtain all necessary approvals by Fire Marshal, D. C., covering plant equipment and its installation and *operation,* and this agreement is made subject to such approval." On July 27, 1948, the defendant executed a bill of sale conveying to the plaintiff "all of his right, title and interest in and to the dry-cleaning and dyeing business known as 'South Capitol Cleaners and Dyers', * * * together with the goodwill, trade name, stock-in-trade, fixtures, equipment, licenses, permits, etc., used in or connected with the conduct of said business," and particularly certain thereinafter described chattels, but specifically reserving to himself certain articles of personal property on the premises.

At the time the plaintiff entered into his agreement to purchase the business, he inspected the plant as to what could be seen, but did not test the equipment. At that time the business was taking in garments

for dry-cleaning, but sending them elsewhere for cleaning, a three-hour service sign was exhibited, the shoe repair department was in operation, the machinery for a dry-cleaning plant was present, but not installed, the necessary connections to the underground equipment were apparently present, and from all outward appearances the sole thing to be done to put the dry-cleaning plant into operation was connection of the machinery above ground with the underground system, which was covered by a cement floor.

The defendant, a dry-cleaning plant operator, had contracted for the installation of the plant, and was satisfied that it was all right. He was unable to recall whether he advised the purchaser to that effect, but testified that if the question were asked he would have so advised the plaintiff.

When plaintiff subsequently took possession of the business and attempted to complete the necessary connections and put the plant into operation, it was found that the dry-cleaning plant was defective, particularly as to the underground system, and incapable of operation. The plaintiff made prompt efforts to contact the defendant in order to inform him of the condition discovered, and the defendant, when reached, referred plaintiff to the contractor who had installed the underground system for him. Neither the defendant nor his contractor was able to find the plans which had constituted the basis for installation of the underground system, although the plans had been drafted by defendant's employee and had been used by the contractor, plumber, and others, in connection with the installation. Neither the defendant, nor anyone authorized and directed by him, attempted to or did correct the defects which prevented operation of the plant. The plaintiff thereupon proceeded to correct the defects, and during the time the plant was not operating was obliged to send all garments out for dry-cleaning elsewhere.

The plaintiff testified that during part of this time it was necessary for him to send garments to Baltimore for cleaning. I find that an adequate showing was not made as to the necessity of sending garments out

of the metropolitan area of Washington for cleaning.

The dry-cleaning plant was put into operation on November 1, 1948.

In remedying the defects, it was necessary for plaintiff to tear up the concrete floor, supply certain missing parts, and replace the floor, as well as to make certain changes in the machinery above ground, some of which were required in order to obtain official approval. In addition, the plaintiff substituted certain dry-cleaning equipment of another make for that which was on the situs at the time he purchased the business.

The evidence showed that had the underground equipment been properly installed, the plant could have been put into operation in two weeks, and further, that the plaintiff's substitution of other equipment for that on the situs at the time of the execution of the sales contract would have required an additional week for making the necessary connections.

There was no evidence that the defendant knew at the time he sold the business to the plaintiff that the plant could not be put into operation with the existing equipment and underground system.

The plaintiff admitted having detained the personal property claimed by the defendant, but is willing to return it to the defendant.

As for the debts assumed by plaintiff but remaining unpaid, the evidence showed three accounts outstanding, namely, R. L. Schmitz-York Service Company, E. L. Phillips, and David Gregory Electric Company. The parties have agreed that the supplemental counterclaim shall be abandoned on the giving of a corporate surety bond by the plaintiff to cover these outstanding accounts.

I find from the contract executed by the parties, particularly Paragraph 6 thereof, and from the testimony in the case, that the plaintiff intended to buy and the defendant intended to sell a dry-cleaning business for the purpose of dry-cleaning and including a dry-cleaning plant which, although not actually in operation at the time of the sales contract, was complete and ready for

operation as such save for connection of the equipment on the situs. The defendant's guarantee of all necessary approvals "covering plant equipment and its installation and *operation*" points to the assurance that the dry-cleaning plant was capable of operation.[1]

I further find that plaintiff's inspection of the business prior to its purchase was reasonable under the circumstances and that under the facts herein it would have been impracticable and unreasonable to have required him to conduct such tests as would have disclosed the defects in the dry-cleaning plant. The cause and degree of the defects in the underground system were unascertainable without removal of the concrete covering. Although plaintiff is also an experienced man in the cleaning and dyeing trade, I conclude that as to the operability of the dry-cleaning plant, and particularly as to the underground system, which had been installed by defendant's contractor, plaintiff was entitled to rely, and did rely, on the "skill or judgment" of the defendant, who was in the better position to know what lay beneath the concrete floor.

In order to give rise to an implied warranty under the Uniform Sales Act the buyer's reliance need not necessarily be a total reliance, but, on the contrary, the buyer may rely on his own judgment as to some matters, and on the skill or judgment of the seller as to others.[2]

I conclude that there was an implied warranty by defendant that the plant would be ready for operation as a dry-cleaning plant on connection of the existing equipment, within the provisions of the Uniform Sales Act as adopted in the District of Columbia, D.C.Code, § 28—1115[3]; that this warranty was breached; that the defendant's warranty of the fitness of the plant was not waived by the plaintiff's substitution of different equipment when he put the plant into operation; and that the plaintiff is entitled to recover such damages as were the natural consequence and proximate result of the breach.[4]

I conclude therefore that the plaintiff is entitled to recover the reasonable cost of correcting the defects in the underground system and other equipment in order to make the plant operable on connection of the underground system with the other equipment, and, in addition, the loss reasonably sustained through having to send garments outside for cleaning during the period of time reasonably necessary to put the dry-cleaning plant into operation less two weeks (the time which would have been necessary to put the plant into operation had the underground system and other equipment been as warranted).[5] The plaintiff is not entitled to recover for any added cost incurred in putting the plant into operation which was occasioned by his substitution of equipment other than that on the situs at the time of the contract, or for loss sustained through sending garments elsewhere for cleaning during the time the cleaning plant was not in operation due to his substitution of equipment; and in computing damages sustained through sending garments outside for cleaning, the basis for recovery should be the added expense which would have been reasonably incurred in sending such garments to a plant in Washington or the metropolitan area.[6]

I conclude that the defendant is entitled to recover his personal property detained by plaintiff, or the reasonable value thereof, plus reasonable damages for detention of the property.

During the trial it became apparent to counsel and the Court that, should liability on the part of either or both of the parties be determined, the case should be referred

1. Thompson v. Rector, 83 U.S.App.D.C. 371, 170 F.2d 167.

2. Kurriss v. Conrad & Co., 312 Mass. 670, 47 N.E.2d 12.

3. Kurriss v. Conrad & Co., supra; Griffith-Consumers Co. v. Noonan, 78 U.S. App.D.C. 32, 136 F.2d 271; Williston on Sales (2d Ed.) § 248.

4. Fries, Beall & Sharp Co. v. Livingstone, 56 App.D.C. 209, 12 F.2d 150.

5. The Nimrod, D.C., 141 F. 215, affirmed 5 Cir., 141 F. 834; Abraham v. Gendlin, 84 U.S.App.D.C. 307, 172 F.2d 881.

6. Fries, Beall & Sharp Co. v. Livingstone, supra.

to the Auditor for determination of the exact amount of monetary damages to be awarded. The trial was had on that basis.

Counsel will present an appropriate order for reference of the case to the Auditor for determination of the amount of monetary damages to be awarded.