SLATER v. BERLIN et al.

BERLIN v. SLATER et al.

WICKERSHAM et al. v. SLATER et al.

Nos. 1284, 1285 and 1286.

Municipal Court of Appeals
District of Columbia.

Reargued Dec. 9, 1952.

Decided Jan. 21, 1953.

Rehearing Denied Feb. 10, 1953.

---

Ralph F. Berlow, Washington, D. C., for appellant.

Rolland G. Lamensdorf, Washington, D. C., for appellee Berlin.

T. Bruce Fuller, Washington, D. C. (Robert H. McNeill, Washington, D. C., on the brief), for appellee Wickersham.
No. 1285:

Rolland G. Lamensdorf, Washington, D. C., for appellant.

Ralph F. Berlow, Washington, D. C., for appellee Slater.

T. Bruce Fuller, Washington, D. C. (Robert H. McNeill, Washington, D. C., on the brief), for appellee Wickersham.

No. 1286:

T. Bruce Fuller, Washington, D. C. (Robert H. McNeill, Washington, D. C., on the brief), for appellant Wickersham.

Ralph F. Berlow, Washington, D. C., for appellee Slater.

Rolland G. Lamensdorf, Washington, D. C., for appellee Berlin.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

CAYTON, Chief Judge.

Before us are three appeals, in a confused situation arising from an attempted sale and resale of real estate. It began when a couple named Carpenter contracted in writing to sell their house to Slater for $22,500. This contract was negotiated through a salesman in the brokerage office of Wickersham. Simultaneously Berlin was interested in buying the same property and approached Peterson, another salesman of the Wickersham office. Peterson reported to Berlin that Slater had already contracted to buy the property, and Berlin desiring to acquire it from Slater, Peterson then presented him with a "contract" for the purchase of the house at a price of $24,000 which Berlin signed, putting up a $500 deposit. Slater signed his acceptance thereon. Shortly thereafter Berlin rescinded in writing and demanded a return of his deposit, charging that Peterson had falsely represented that the sale price from Carpenter to Slater had been $23,500 ($1,000 more than the actual price) and that his offer was that he would pay only $500 over the price Slater had paid. Berlin's demand for rescission was refused by Slater.[1]

Slater sued Berlin for breach of contract. Berlin defended on the ground that he had been induced to sign the contract by the misrepresentations of Peterson, the Wickersham salesman, and in a counter-claim he demanded of Slater the return of his deposit. Berlin also filed a third party complaint against Wickersham, Peterson and the two surety companies on their bonds. Slater filed a cross-claim against Wickersham, Peterson and the sureties. At an earlier trial, following the opening statements of counsel, verdicts were directed disallowing recovery on the complaint, the cross-claim and the counterclaim. We reversed, applying the established rule that the direction of verdicts was improper because there were questions of fact to be developed by testimony. Slater v. Berlin, D.C.Mun.App., 83 A.2d 228.

At the second trial testimony was taken and the case was submitted to the jury on two special interrogatories which we shall discuss in a moment. Based on the answer to such interrogatories the court entered judgment as follows: For Slater against Berlin for $1,500; for Berlin against third party defendants Wickersham, Peterson, and one surety for $2,000; and against the second surety for $1,000. All parties have appealed.

We could not, without undertaking a lengthy treatise, discuss the many errors assigned by the various parties. We limit ourselves to a discussion of a single point which requires reversal and to certain other questions which are likely to arise if the case is tried again.

The first interrogatory submitted to the jury required them to answer whether Berlin had entered into the agreement with Slater as a result of a "false misrepresentation" made by Peterson, the Wickersham salesman. This question the jury answered yes. The second interrogatory, with the jury's answer thereto, was as follows:

Whose agent, if anyone's was the Wickersham Realty Company, at the time the misrepresentation was made.

Joseph E. Slater ..........
Eugene A. Berlin ..........
The Carpenters
(Original sellers) ....X....
No one ......................

---

1. Slater having left the country to accept employment in Germany, this and other steps were taken by his attorney-in-fact.

Slater does not question that his attorney in-fact had authority to act for him.

We rule that because it included the Carpenters this second interrogatory was improper. There was no evidence from which the jury could have found that during the transaction between Slater and Berlin the broker Wickersham was agent of the Carpenters. The fact that Wickersham had been the agent of Carpenter in the sale to Slater had no legal bearing on any of the questions before the trial court. Hence the inclusion of the Carpenters in the interrogatory and the submission to the jury of their connection with the case inevitably had a diversionary effect on the minds of the jury. There was of course no legal relationship between Carpenter and Berlin, and the relationship and liability between Carpenter and Slater derived no status (and lost none) from the later agreement between Slater and Berlin. Whatever rights or claims Carpenter may have had were not even remotely in issue in this litigation.

Arguing the propriety of the interrogatory and the jury's response thereto, Slater contends that Wickersham was under a duty to his principal Carpenter to try to find another buyer when he learned that Slater would not or could not perform. But we must not forget that the Carpenter-Slater contract was, so far as appears in the record, valid and enforceable, or that Wickersham acted in the Slater-Berlin transaction not because Slater had indicated any unwillingness or inability to perform but because it was approached by Berlin who wanted to buy from Slater, and obviously could not buy from Carpenter. There was no evidence that anyone regarded Wickersham as agent for Carpenter in the dealings between Slater and Berlin. The question of agency is the primary, if indeed not the most crucial issue in the case; hence the submission of that issue to the jury on an erroneous theory must be held reversible error.

Standing alone, the jury's answer to the first interrogatory will obviously not support the judgment. Assuming that the Berlins were the victims of a material misrepresentation, something more is required to justify a judgment in favor of Slater against Berlin, and in favor of Berlin against the third party defendants. The question of who may recover what from whom is not answered by a bare finding that one of the parties was the victim of fraud or misrepresentation. On the evidence Berlin's attempted rescission can only be sustained if the realty company was the agent of Slater.

Berlin contends that since the contract describes Wickersham as the agent of the seller,[2] Wickersham is the agent of Slater as a matter of law. He relies on Brill v. Mushinsky, 90 U.S.App.D.C. 132, 194 F.2d 158. There a contract for the sale of realty recited "The seller agrees to pay to ——————, his agent, a commission amounting to $——————. * * *." The blanks in the contract in that case had not been filled in before the buyer signed, and there had been some dispute between the seller and the broker over the payment of the commission. One of the seller's contentions was that since the instrument did not state who was to pay the commission or at what rate it was to be paid, there was no contract. The court said, "We think that sentence is a clear provision that the broker was the agent of Mushinsky and that Mushinsky was to pay his commission. An agreement between Mushinsky and his agent as to the amount of the commission was not a necessary element in the agreement between Mushinsky and Brill * * *."[3]

In this case the issue cannot be disposed of so simply. Other considerations are involved and must be dealt with. There was testimony specifically denying that either when the alleged misrepresentation was first made or when Berlin signed there had been any contact whatsoever between Slater and Wickersham regarding another sale of the house. Hence, Slater argues (correctly we think) that the only possible basis

---

2. The clause reads: "The seller agrees to pay to Victor Wickersham Realty, his agent, the regular rate of commission amounting to $1,000.00."

3. Cf. Wittlin v. Giacalone, 84 U.S.App.D. C. 140, 171 F.2d 147, where language identical with that in the Brill case was treated only as evidence of a fiduciary relationship.

for saying that Wickersham was his agent would be on the theory of ratification. And, he argues further, ratification cannot result from the affirmance of an act done by one who does not purport to act in behalf of the person affirming.

 No doubt a necessary element of ratification is that the alleged agent must have purported to act for the principal.[4] But it is not necessary that the alleged agent represent to the third person that the principal has authorized him to act on his account in the transaction. A person purports to act for another if he undertakes to act on his behalf and to make the purported principal a party to the transaction.[5] Whether in a particular situation there is an intent to make a present agreement subject to ratification or a mere offer which may later be accepted depends upon the understanding of the parties. In other words, it is usually a question of fact.[6] That is the situation in this case. Therefore our problem is not answered by the Brill case.

We are clear in our view that on the evidence we have no right to rule as a matter of law that Peterson or the Wickersham office purported to act for Slater prior to the time Slater became aware of the material facts. We likewise have no right to rule as a matter of law that Wickersham was the agent for Berlin. If it should be found that Wickersham purported to act on the account of Slater there remains the question of whether or not there has been such an affirmance as will result in a ratification.

 Ordinarily, an affirmance may be established by any conduct of the purported principal manifesting that he consents to be a party to the transaction, or by conduct

justifiable only if there is ratification.[7] Whether or not the principal has ratified is a question of fact to be determined from all the circumstances of the case.[8] But it is correct to say that an affirmance results in a ratification if the purported principal, with knowledge of the material facts, "brings suit to enforce promises which were part of the unauthorized transaction or to secure interests which were the fruit of such transaction and to which he would be entitled only if the act had been authorized."[9]

 Next we consider Slater's contention that the trial court was wrong in limiting his recovery to $1,500 instead of the $2,000 he claimed. That claim was based on the difference between the Carpenter and Berlin contracts ($1,500) plus his forfeiture under the Carpenter contract ($500). In that connection Berlin contends that he is not liable in any amount because he was never notified to appear for settlement and that Slater's damages if any are based not on the difference between the two contracts but on the market value of the property. The effect of Berlin's argument is that Slater was not ready, willing and able to perform and has never tendered performance. But the law does not require useless acts. Where a party to a contract gives notice to the other that he will not comply with its terms, the other need not, in an action for its breach, aver or prove tender of performance on his part. Bu-Vi-Bar Petroleum Corporation v. Krow, 10 Cir., 40 F.2d 488, 69 A.L.R. 1295; Lamborn & Co. v. Log Cabin Products Co., D.C. Minn., 291 F. 435.

 Assuming that Slater has a just claim against Berlin it is elementary that a defendant who breaches a contract is

4. Fay v. Doyle, 68 App.D.C. 199, 95 F. 2d 110; Valaske v. Wirtz, 6 Cir., 106 F.2d 450, 124 A.L.R. 889; Pullen v. Dale, 9 Cir., 109 F.2d 538; annotation, 124 A. L.R. 893; Restatement, Agency, sec. 85.

5. Restatement, Agency, sec. 85, comment (b).

6. Restatement, Agency, sec. 85, comment (c).

7. Restatement, Agency, sec. 93.

8. Greyvan Lines v. Nesmith, D.C.Mun.App., 50 A.2d 434.

9. Wolfe v. Shell Petroleum Corporation, 10 Cir., 83 F.2d 438, certiorari denied 299 U.S. 553, 57 S.Ct. 19, 81 L.Ed. 407; Perkins v. Benguet Consol. Mining Co., 55 Cal.App.2d 720, 132 P.2d 70, certiorari denied 319 U.S. 774, 63 S.Ct. 1435, 87 L.Ed. 1721, rehearing denied 320 U.S. 803, 64 S.Ct. 429, 88 L.Ed. 485; Restatement, Agency, sec. 97.

liable for those damages which are the natural consequence of such breach. Thompson v. Rector, 83 U.S.App.D.C. 371, 170 F.2d 167. A natural,—indeed an inevitable—consequence of the assumed breach was the loss of that particular sale, from Slater to Berlin. Our present concern is the measure of damage thereby created.

██ Berlin and Wickersham make the contention that the proper measure of damages was the difference between the sale price in the Carpenter contract and the market value of the property.[10] This seems to be in accord with a line of cases which hold that "The established rule in this jurisdiction is that damages under these circumstances are the difference between the contract price and the fair market value of the property." Quick v. Pointer, 88 U.S. App.D.C. 47, 186 F.2d 355, citing Peoples Mortg. Corporation v. Bedrosian, 81 U.S. App.D.C. 69, 154 F.2d 332; Bedrosian v. Peoples Mortgage Corporation, 87 U.S. App.D.C. 7, 182 F.2d 395; Thompson v. Rector, 83 U.S.App.D.C. 371, 170 F.2d 167. In the Quick case a vendee had sued his vendor for breach of contract of sale and the court ruled that because there was no evidence of "fair market value" the vendee could not recover his anticipated profit on a resale contract. Under these rulings, stated and repeated by our highest Court, we think that at the next trial the Munic-ipal Court should require proof of fair market value.

██ Whether or not Slater may also recover from Berlin the amount of his own forfeiture to Carpenter depends on whether that $500 item of damage was a "natural and proximate result of his breach," as stated in Thompson v. Rector, supra. Notwithstanding that Slater was already obligated to Carpenter prior to the Berlin contract, if it were fairly within the contemplation of Slater and Berlin when they made their contract that Slater would have to forfeit unless Berlin performed, then the forfeiture would seem to be a natural result of the breach,[11] otherwise not.

██ Wickersham points to the paragraph of the contract which provides, in substance, that the parties shall not be bound by any terms, conditions, statements or representations, oral or written, not therein contained. It is its theory that any statement or representations not included in the instrument are not to be considered in determining the agreement between the parties. But it is clear that such a clause will not prevent a party from showing that he was fraudulently induced to enter a contract. Owen v. Schwartz, 85 U.S.App.D.C. 302, 177 F.2d 641, 14 A.L.R. 2d 1337.

Reversed, with instructions to award a new trial.

---

10. As to this the only testimony was by Peterson, who stated his opinion that the property was worth "somewhere between twenty-five and twenty-six thousand at that time." The trial judge indicated that this was the measure of damages to be applied, but the record does not show whether in making up the judgment it was actually applied or not; the judgment for Slater, as we have seen, was for $1,500, with no indication in the record as to how it was computed.

11. See Tague Holding Corporation v. Harris, 250 N.Y. 422, 165 N.E. 834, but compare McDaniel v. Daves, 139 Va. 178, 123 S.E. 663.