[Civ. No. 213.   First Appellate District.—August 15, 1906.]

## CORA L. BRACKETT, Administratrix, etc., Respondent, *v.* H. MARTENS, Appellant.

SALES—BUDDED FRENCH PRUNE TREES—IMPLIED WARRANTY OF KIND—FINDING—PRESUMPTION.—Upon a request for the sale of French prune trees, properly budded on Myrobolan roots, the only warranty implied is that they are of that kind or character. Where the court found that the trees sold were French prune trees budded on such roots, without finding whether or not they were properly budded, it must be presumed that they were properly budded.

ID.—MERCHANTABILITY NOT WARRANTED—PURCHASE OF SMALLEST TREES—EXPRESSION OF OPINION—FINDING AGAINST EVIDENCE.—Where the evidence showed that plaintiff purchased cheap trees of the smallest, lowest grade in the nursery, without agreement as to the length of time they would continue to grow, and that defendant merely expressed the opinion that the trees were good trees, if taken care of, a finding that defendant warranted them to be merchantable is against the evidence.

ID.—DATE OF MERCHANTABILITY—DEATH OF TREES AFTER THREE YEARS' GROWTH—PRESUMPTION.—It is not a presumption of law or of fact that a fruit tree sold in February, 1896, was not then merchantable, because, after growing during four summers, on plaintiff's soil, under which lay a deep stratum of blue clay, it died thereon in the fall of 1899.

ID.—WARRANTY OF LIFE AND GROWTH.—Even if the defendant had expressly warranted in writing to plaintiff that the trees sold would live and grow, that would not mean a warranty to the plaintiff that they would always live and grow on his land.

ID.—ACTION UPON PAROL WARRANTY OF MERCHANTABILITY—STATUTE OF LIMITATIONS—TIME OF OPERATION—BREACH—DISCOVERY.—In an action upon an alleged parol warranty of merchantability of the trees sold, the two years' statute of limitations under subdivision 1 of section 339 of the Code of Civil Procedure applies, and began to run from the date of the breach, when nonmerchantable trees were sold and delivered, and not from the time of the death of the trees after three years' growth on plaintiff's land, when plaintiff claimed that the nonmerchantability was first discovered by him.

APPEAL from a judgment of the Superior Court of Santa Clara County, and from an order denying a new trial. A. L. Rhodes, Judge.

The facts are stated in the opinion of the court.

Wm. P. Veuve, for Appellant.

J. B. Kirwin, for Respondent.

COOPER, J.—The complaint alleges that in February, 1896, the defendant sold and delivered to plaintiff one thousand French prune trees, and at the same time warranted to the plaintiff that they were merchantable French prune trees properly budded on Myrobolan roots; that plaintiff relied solely upon said warranty and paid defendant the price therefor, $45; that all of said trees were not merchantable French prune trees, properly budded, nor were either or any of them properly budded on Myrobolan roots, but that they were all and each of them budded in an improper manner on an inferior and worthless root, and of no value whatever to plaintiff.

That plaintiff planted the said trees upon land owned by him in March, 1896, but that at no time subsequent to the sale did plaintiff discover, nor had he any means or opportunity by ordinary diligence of discovering, that said trees were not of the variety so ordered and paid for by plaintiff, to wit, merchantable French prune trees properly budded on Myrobolan roots, as represented and warranted by defendant, until the fall of 1899, when the said trees began rapidly to die.

That plaintiff's land with said worthless and inferior variety growing thereon is worth less by $5,000 than it would be worth were the trees growing thereon the trees so ordered and paid for by the plaintiff, and that hence plaintiff has been damaged in the sum of $5,000.

The defendant demurred to the complaint on the ground that it does not state facts sufficient to constitute a cause of action. The demurrer was overruled, and defendant answered, denying the material allegations of the complaint, and also alleging that the cause of action is barred by the provisions of section 337, and the provisions of subdivision 1 of section 339 of the Code of Civil Procedure.

The case was tried before the court, and findings filed, upon which judgment was ordered and entered in favor of the plaintiff for $1,500 damages, besides costs.

Defendant made a motion for a new trial, which was denied, and this appeal is from the judgment and the order denying the motion.

The court found that defendant warranted the said prune trees to be merchantable French prune trees, budded on Myrobolan roots, but that they "were not merchantable French prune trees, though budded on Myrobolan roots, but were each and all unmerchantable French prune trees, and were not fit for the purposes for which they were sold." The court further found that plaintiff "did not know, and by the use of ordinary diligence did not and could not discover, that said one thousand trees were defective and unmerchantable until the fall of the year 1899, when they began rapidly to die, and he then, for the first time, discovered that said trees were not as represented and warranted by defendant." The court found against defendant as to the statute of limitations. There is no finding as to whether or not the trees were properly budded, and as the court found that they were budded on Myrobolan roots, and that they were French prune trees, we must presume that they were properly budded. There is no finding that the trees were improperly budded, nor that they were budded on inferior roots, and we must therefore presume that they were properly budded on Myrobolan roots. The material finding, then, upon which the judgment must rest, if it can rest upon any finding, is that the trees were warranted to be merchantable and that they were not merchantable as warranted.

It is contended that there was an express warranty made by the defendant to the plaintiff at the time of the sale to the effect that the trees were merchantable, and the court so found. Upon a careful examination of the evidence we have concluded that it does not support the finding. It will not be necessary to decide the question as to whether or not the trees were merchantable, for the reason that if the defendant did not warrant them to be merchantable the question would be immaterial. It may, however, be said that there is slight evidence that the trees were not merchantable, except the fact that they began rapidly to die in the fall of 1899. They grew during the summer of 1896, 1897, 1898 and 1899 until fall, before the plaintiff, according to his own testimony, discovered or could have discovered that they were not merchantable. It is not a presumption of law or of

fact that a fruit tree sold in February, 1896, was not then merchantable simply because it died in the fall of 1899. The reason why the trees began to die in the fall of 1899 is not clear. There is much testimony to the effect that the soil where the trees were planted is only two or three feet deep, and that beneath it there is a blue clay some one hundred feet in depth that is not porous and through which water will not penetrate, and hence the sediment or top soil is not moistened or fed by capillary attraction from the clay below; that there is a great amount of alkali in the soil, and that it is not proper soil for an orchard; that the roots of the trees when they reached the clay could go down no farther, and hence spread out along the clay underneath the soil, and being unable to get nutriment, the roots starved and perished. There is also testimony to the effect that the trees were poorly cultivated, not properly pruned, and crops grown in between the rows, which deprived them of the nutriment and moisture that they would otherwise have received. The fact that they grew for more than three years, so that plaintiff could not discover anything wrong about them, would tend very strongly to corroborate the theory that when the trees arrived at the age when the roots needed more room to reach down and procure nourishment, and could go no farther, the starvation of the tree began. There is testimony which is not contradicted that an orchard had before been planted on this same land and perished. The trees died by what many of the witnesses call "pinch-off," which is the growing of the bud on top much more rapidly than the root or original stock, causing the trunk of the tree or new stock to be larger above the point where it has been joined or grafted than the stem of the original variety. The testimony showed that the union of bud and stock was good, and there was no weakness of the stem at the point of union except the overgrowth of the scion as described by the witnesses.

The testimony claimed to support the finding as to an express warranty is that of the plaintiff and the defendant and that of the plaintiff's father. Defendant's testimony shows without conflict that the trees were graded in three classes or grades. If they had made a growth of four feet or over at one year old, they were called first class and sold at ten cents each; from three to four feet, the second class, and sold at six cents each; and from two to three feet the third class,

and sold at four cents each. Plaintiff testified: "Went to defendant's nursery and looked at his trees. My father bought some six-cent trees and I took the balance of them, two hundred. Then he (defendant) showed me some smaller trees, and said they were just as good only they had not been irrigated and forced along; took eight hundred of the latter. He said they were No. 1 trees, only they were not forced along by water like the balance. He told me I could have my choice of the four-cent trees. This is all he said."

Plaintiff's father testified: "I went with my son to defendant's nursery to post him, to see that he got good trees; defendant said they were good trees, but they had not had the care the others had. All that was said was this—that I wanted so many trees, and my son so many. I wanted them on Myrobolan root—would not take any other as a gift because I was afraid of the floods coming there and injuring them. I could not raise peach root, or peaches or apricots. I can't tell the words that were said, but the meaning was to get good trees—good roots. That is the manner and kind I did get. . . . Martens said they were good trees if taken care of—that they would make good, thrifty trees . . . he said they had not been irrigated and cultivated as the others had."

Defendant testified: "I told him we had plenty of trees but they were of different sizes and different prices. He asked me what the first class were worth. I told him ten cents; that there was a nice size which we call No. 2, worth six cents; and there was a size which we call No. 3, worth four cents. . . . I told him there were four-cent trees, if he approved of them, but that they were not so large as he had been getting. He said the four-cent trees looked to him plenty good enough, and he would just as soon have them as any others for that price. So he accepted the trees shown to him. He pulled up and examined several bunches of the four-cent grade. They were satisfactory to him, he said, so long as he was getting them at that price. He came for them himself, and took his own choice of the lot. I was not present when he took the trees—the four-cent trees. This is all the conversation we had about the purchase of the trees. . . . When this purchase was made, some of the trees were drawn out of the piles, and Mr. Brackett examined them. In his case many trees out of many piles of the different grades were

pulled out and inspected by Mr. Brackett. The trees I sold to Brackett were third-class trees, and I told him so. . . . I did not warrant these trees which I sold to Brackett, and the words warrant and merchantable were not used at all in our conversation.''

This is all the testimony on the question of warranty. The defendant did not say that he would warrant the trees, and while he said they were good trees he fully explained to plaintiff that they had not been very well taken care of, and that they were the cheapest grade. He also told the plaintiff that if taken care of, they would make good, thrifty trees. They were shown to plaintiff and he examined them, and picked them out of the grade shown him. They were French prunes on Myrobolan roots, properly budded. The defendant was asked for French prune trees on Myrobolan roots, and by the sale of the trees he warranted them as such. This warranty the court found to be true, but defendant, by stating that they were *good trees if taken care of,* was merely expressing his opinion. It was not understood that the language used was used as an undertaking that the trees were merchantable trees. They were sold as the smallest, lowest grade in the nursery. Plaintiff bought them as such. There was no undertaking by defendant that they would continue to grow three, five, or ten years.

A warranty is an engagement by which a seller assures to a buyer the existence of some fact affecting the transaction. (Civ. Code, sec. 1763.) In this case plaintiff did not ask for merchantable trees, but for French prune trees on Myrobolan roots. The statement by the defendant that they were good trees if taken care of was not the assurance of a fact affecting the transaction.

A warranty is defined in Benjamin on Sales, section 610, as a ''Collateral undertaking *forming a part of the contract* by the agreement of the parties, express or implied,'' and the American note to the same section, pages 606-608, says that a warranty ''is an assurance of some fact, coupled with an agreement, express or implied, to make the assurance good or pay for the deficiency,'' and that all the authorities ''agree that mere words of praise and commendation, or which merely express the vendor's opinion, judgment or estimate, do not constitute a warranty.''

In *Byrne* v. *Jansen,* 50 Cal. 627, the plaintiff claimed damages for breach of an alleged warranty in the sale of certain wool. The court said: "The conversation had between the defendant and the plaintiff's agent did not amount to a warranty. . . . There is nothing in the circumstance that the defendant expressed a somewhat favorable opinion of his wool, that he indulged an opinion that, while Mr. Conn's wool might be a little finer than his own, his was fully as profitable as Conn's for manufacturing purposes. This was mere praise of his own property—the *simplex commendatio* which is allowable in making a trade, and is not held by the rule of the common law to amount to a warranty."

In *Polhemus* v. *Heiman,* 45 Cal. 579, a portion of the opinion in *Henshaw* v. *Robins,* 9 Met. 83, [43 Am. Dec. 367], is quoted with approval wherein it is said: "No expression of opinion, however strong, would import a warranty. But if the vendor at the time of sale affirms a fact as to the essential qualities of his goods in clear and definite language, and the purchaser buys on the faith of such an affirmation, that we think is an express warranty."

Saying to a buyer that a machine will do good work, or is a good machine, was held not to necessarily constitute a warranty. (*McDonald Mfg. Co.* v. *Thomas,* 53 Iowa, 558, [5 N. W. 737].) So the words "good excellent butter" were held to be merely descriptive, and not a warranty (*Freenthal* v. *Schneider,* 52 How. Pr. 133) ; and a statement by a seller of guano "that it is a good fertilizer" was held not to amount to a warranty (*Farrow* v. *Andrews,* 69 Ala. 96) ; and by the vendor of a machine that it "was a very good machine and will do very nice work" (*Worth* v. *McConnell,* 42 Mich. 473, [4 N. W. 198]).

Counsel for respondent states in his brief, "It seems to us that in the sale of the prune trees there was an implied warranty, even if the language used was not an express warranty, that they were merchantable in that they should reasonably answer the purpose for which they were sold," and he cites in support of his theory of implied warranty sections 1769 to 1778 of the Civil Code. The sections referred to are under part IV, chapter II, article III of the code. Section 1764 is as follows: "No implied warranty in mere contract of sale. Except as prescribed in this article a mere contract of

sale or agreement to sell does not imply a warranty." The only section under the article claimed to be applicable is section 1769, which reads: "Manufacturers' warranty against latent defects. One who sells or agrees to be free from any latent defect, not disclosed to the buyer, be free from any latent defect, not disclosed to the buyer, arising from the process of manufacture, and also that neither he nor his agent in such manufacture has knowingly used improper materials therein." It may be doubted whether the prune trees were an article of defendant's own manufacture within the meaning of the above section. The trees were purchased, that is, the original Myrobolan stock, by the defendant, and imported from France, and subsequently budded by defendant to French prunes. Defendant planted the young trees and budded them to a different stock. But if it be conceded that the trees were "an article of defendant's own manufacture," there was no latent defect arising from the process of manufacture, because the only process was budding the French prune in the Myrobolan stock which, as has been said before, was properly done, and proper materials were used.

The defendant alleged in his answer that the cause of action is barred by the provisions of subdivision 1 of section 339 of the Code of Civil Procedure, which provides that an action must be commenced within two years upon "a contract, obligation or liability not founded upon an instrument of writing." The court erred in holding that the action was not barred under the section cited. The cause of action, if any, arose upon the purchase of the trees in February, 1896. If the defendant sold to plaintiff trees different from what he had warranted, they were different at the time they were sold. Section 338 cannot aid plaintiff, because the action is one for a breach of warranty, and not for relief on the ground of fraud or mistake. Upon the breach of any contract the statute begins to run at the date of the breach. See *Lattin* v. *Gillette*, 95 Cal. 317, [29 Am. St. Rep. 115, 30 Pac. 545], where the question is fully discussed. If the rule contended for by plaintiff be correct, the trees might have lived eight, ten or fifteen years, and then have died, and plaintiff would not till then have discovered that they were not merchantable in February, 1896. If defendant had warranted in writ-

ing that the trees would live and grow, such warranty would not mean that they would live and grow forever.

The judgment and order are reversed.

Hall, J., and Harrison, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on September 13, 1906.