# P. H. SHEEHY COMPANY v. EASTERN IMPORTING & MFG. COMPANY.

STATUTE OF LIMITATIONS; SALES; WARRANTY.

1. Reliance upon the statute of limitations cannot be had by one who conceals a fraud or commits a fraud in such a manner that it conceals itself until he can plead the statute, and this rule is as applicable to actions at law as to suits in equity. (Citing *Lewis* v. *Denison*, 2 App. D. C. 387.)

2. The statute of limitations does not begin to run against a claim by the buyer for breach of warranty by the seller of the merchantableness of the goods sold, until after the lapse of a reasonable time within which the buyer, by the exercise of ordinary diligence under all of the circumstances, could have ascertained the fact of the breach of the warranty.

No. 2799. Submitted October 11, 1915. Decided November 1, 1915.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia in an action on a contract, the judgment having been entered on motion of the plaintiff for want of a sufficient affidavit of defense.

*Reversed.*

The COURT in the opinion stated the facts as follows:

November 14, 1914, the Eastern Importing & Manufacturing Company, as plaintiff, began an action in the supreme court of the District of Columbia against the P. H. Sheehy Company to recover the sum of eight hundred and forty dollars ($840).

The declaration was accompanied by an affidavit for judgment under the 73d rule.

Defendant pleaded in set-off the sum of nine hundred and

Note.—As to when statute of limitations begins to run for breach of warranty, see note in 15 L.R.A.(N.S.) 162.

seventeen dollars and fifty cents ($917.50) as due by plaintiff to it.

The plea alleges that defendant ordered from plaintiff 300 cases of sardines August 30, 1911, which were represented to be in good merchantable condition, and to be in all respects similar with the samples exhibited to defendant at the time; which said samples were of good quality and condition.

Plaintiff erroneously shipped to defendant 675 cases, which defendant refused to accept, and the same were stored by plaintiff in the city of Washington.

As a result of negotiations, defendant agreed to accept the 675 cases, which were delivered to it about August 1, 1911, and for which defendant thereafter paid the plaintiff the sum of $1,510.31; that after the receipt of said sardines defendant attempted to sell the same in its usual course of business as a wholesale grocer, but was unable to obtain the market price for the same because they were found to be inferior in quality, unsalable as first-class goods, and not similar in kind or quality with the samples exhibited to defendant at the time of said sale.

Upon discovery of the defective condition of the said goods, which was not made, and could not reasonably be made, until on or about March 26, 1912, defendant then promptly notified plaintiff of the fact, and demanded that the plaintiff take back the sardines and refund the money paid for them, or ship defendant other sardines in lieu of the same; that defendant was compelled to sell the sardines at prices far below the market price, whereby it sustained a loss of $917.50.

It pleads this sum in set-off of plaintiff's demand and prays that it have judgment for the excess.

This was accompanied by particulars of demand showing the several items of loss in the resale of said sardines.

Plaintiff moved for judgment notwithstanding [the affidavit of defense supporting] this plea and the court, granting the motion, rendered judgment for plaintiff for the amount of its demand, namely $840.

*Mr. A. E. L. Leckie, Mr. Joseph W. Cox, Mr. John A. Kratz,* and *Mr. Joseph T. Sherier,* for the appellant:

Where an article is sold in which there is a latent defect the statute will not begin to run until the time when the defect is discovered, or in the exercise of ordinary care ought to have been discovered. *Shearer* v. *Park Nursery Co.* 103 Cal. 418; *Felt* v. *Reynolds Rotary Fruit Evaporating Co.* 52 Mich. 602; *Ingals* v. *Angell,* 76 Wash. 693; *Krasilnikoff* v. *Dundon,* 8 Cal. App. 406; *Waldteufel* v. *Pacific Vineyard Co.* 106 Cal. App. 624, 628; *Germain Fruit Co.* v. *Armsby Co.* 153 Cal. 585–590; 30 Am. & Eng. Enc. Law, 207; *Beach* v. *Branch,* 57 Ga. 362, 366.

*Mr. Henry P. Blair* and *Mr. Arthur Hellen,* for the appellee:

In the absence of fraudulent concealment by the vender, the statute begins to run on the date the defective goods are sold, and not when the defect is discovered or the damage results. No allegations of fraud or concealment are here involved. See 25 Cyc. 1091, 1092; *Battley* v. *Faulkner,* 3 Barn. & Ald. 288; *Brackett* v. *Martens,* 4 Cal. App. 249, 87 Pac. 410; *Fairbanks, M. & Co.* v. *Smith,* — Tex. Civ. App. —, 99 S. W. 705; *Allen* v. *Todd,* 6 Lans. 222; *Baucum* v. *Streater,* 50 N. C. (5 Jones, L.) 70; *Bancroft* v. *Tool Co.* 47 Pac. 684; *Wilcox* v. *Plummer,* 4 Pet. 172.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

The question in this case is when the statute of limitations began to run against defendant's demand in set-off.

If from the date of sale and delivery, the set-off is barred. If it began to run only from the discovery of the condition of the sardines, or from such time as this condition could reasonably have been discovered as pleaded, the judgment must be reversed.

The contention in support of the judgment below is that when property is sold with a warranty of soundness the cause of action for breach of that warranty occurs immediately upon the sale and delivery of the goods, and the statute of limitations begins to run from that time.

The following authorities are relied upon in support of the proposition:

25 Cyc. 1091, 1092; *Battley* v. *Faulkner,* 3 Barn. & Ald. 288, 22 Revised Rep. 390; *Brackett* v. *Martens,* 4 Cal. App. 249, 87 Pac. 410; *Fairbanks, M. & Co.* v. *Smith,* — Tex. Civ. App. —, 99 S. W. 705; *Allen* v. *Todd,* 6 Lans. 222; *Baucum* v. *Streater,* 50 N. C. (5 Jones, L.) 70.

Of the cases cited above only one, *Allen* v. *Todd,* directly supports the proposition.

In *Battley* v. *Faulkner* the cause of action was that defendant had sold plaintiff certain wheat warranted to be "spring wheat" in 1810; shortly after, plaintiff sold the wheat, with the same warranty, to one S. who, having planted it, discovered it was not as warranted. He began an action against plaintiff and recovered damages.

S. had notified plaintiff of the breach of the warranty in 1810 and then brought his action. The plaintiff notified the defendant of the pendency of the suit, judgment in which was not rendered until 1818. Plaintiff, paying S.'s judgment, brought suit against defendant in 1818.

All that was decided in the case was that the statute began to run from the breach of the contract, and not from the date of the consequential damage. The limitation period was six years.

Abbott, Ch. J., said: "The plaintiff in this case might, as soon as he knew of the defective quality of the wheat, or at any time within the six years, have sued out a writ, and have thus obtained an efficient remedy against the defendant. It is by his own negligence that he is deprived of his remedy, and he has no right to complain."

It was said that the breach of the contract is the gist of the

action, and the special damage is stated merely as a measure of the damages resulting from the cause of action.

*Baucum* v. *Streater* is a similar case.

*Fairbanks, M. & Co.* v. *Smith,* — Tex. Civ. App. —, 99 S. W. 705. The plaintiff company sued for the breach of a contract in the purchase of a pump, which he discovered was defective.

It was held that the statute began to run from the time that plaintiff discovered the defect, and not from the date of the consequential damages.

Statutes of limitation were enacted to prevent frauds; to prevent parties from asserting rights after the lapse of time had destroyed or impaired the evidence which would show that such rights never existed, or had been satisfied, transferred, or extinguished, if they ever did exist. To hold that by concealing a fraud, or by committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it, is to make the law which was designed to prevent fraud the means by which it is made successful and secure. And there is no reason why this principle should not be applicable to suits on the law side of the court as to those on the equity side.

*Bailey* v. *Glover,* 21 Wall. 342–349, 22 L. 'ed. 636–638; *Lewis* v. *Denison,* 2 App. D. C. 387–393.

It cannot be said that a person should assert a right before he has knowledge of, or is chargeable with knowledge of, the same.

He must ordinarily have had such opportunity to ascertain his position as would be sufficient in the case of a man of ordinary intelligence and prudence under the circumstances of the case.

He must be diligent in informing himself upon the true state of affairs, culpable ignorance being offensive both in equity and at law.

The vender knew that plaintiff was a wholesale grocer when he made the sale, and that it was not likely that the true con-

dition of the goods sold would be discovered except on examination by retail dealers.

Apparently, from the averments of the plea, it was not practicable to examine the various cans of sardines contained in the cases sold.

If, then, it was not practicable for plaintiff to discover the true condition of the sardines, it ought to be allowed a reasonable time within which to make that discovery, and the statute of limitations would not begin to run until such time. *Shearer* v. *Park Nursery Co.* 103 Cal. 415–419, 42 Am. St. Rep. 125, 37 Pac. 412; *Felt* v. *Reynolds Rotary Fruit Evaporating Co.* 52 Mich. 602–604, 18 N. W. 378; *Lewey* v. *C. H. Fricke Coke Co.* 166 Pa. 536–543, 28 L.R.A. 283, 45 Am. St. Rep. 684, 31 Atl. 261, 18 Mor. Min. Rep. 179; *Beach* v. *Branch,* 57 Ga. 362–366.

The exception to the plea of limitations should have been overruled, and the cause should have been submitted to the jury, with an instruction to the effect that the statute of limitations only began to run from the time when plaintiff, by the exercise of ordinary diligence under all the circumstances of the case, ought to have ascertained the fact of the breach of the warranty.

The judgment is reversed, with costs, and the cause remanded for further proceedings.    *Reversed and remanded.*