Mike J. MORFESSIS, t/a Mike J. Morfessis
Restaurant Equipment Co., Appellant,

v.

STERLING METALWARE COMPANY,
a Pennsylvania corporation, Appellee.

No. 3250.

District of Columbia Court of Appeals.

Argued June 24, 1963.

Decided July 31, 1963.

Rehearing Denied Sept. 5, 1963.

Ewing Laporte, Washington, D. C., for appellant.

M. Michael Cramer, Washington, D. C., with whom H. Thomas Sisk, Jr., Washington, D. C., was on the brief, for appellee.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

QUINN, Associate Judge.

Appellee, a manufacturer of metalware equipment, sued appellant for the purchase price of a refrigerated stainless steel salad case. Appellant, a contractor engaged in remodeling and equipping restaurants, conceded liability for the purchase price, $1,012, but counterclaimed for $970. Trial was confined to the merits of the counterclaim (appellant proceeded as the party plaintiff), and at the close of all the evidence, the trial judge directed a verdict for appellee. This appeal followed.

Appellant testified that his purchase was unusual in that he contemplated a salad case with stainless steel on four sides for use as a display piece in the center of the restaurant. The typical salad case manufactured by appellee was equipped with a galvanized back suitable for placement against a wall. Appellant testified that he phoned Mr. Kanoff, appellee's president, prior to placing his written order to explain the special nature of his request and the use he intended to make of the salad case.

Appellant stated that when the salad case was delivered on March 17, 1962, both the shipping crate and salad case were damaged: one of the legs was bent, the back of the compressor housing was damaged, and the sides were dented. Appellant notified the shipper and Mr. Kanoff of the damage by phone the next day, and explained that the salad case was unfit for use as a display piece in the center of the restaurant. On April 1, 1962, appellant wrote a letter to Mr. Kanoff stating: " * * * until such steps for correction, replacement, or adjustment is made by your company or the freight company, we are not responsible to you for the payment of said case." The record reveals that appellee responded to this letter on July 24, 1962, when Mr. Kanoff wrote appellant denying responsibility for the damage. Attached to Mr. Kanoff's letter was a communication from the carrier appellee had employed. This communication, dated July 17, 1962, stated that the carrier had inspected the salad case earlier in July and that the salad case was damaged in the rear and left corner. However, in the absence of a showing that the original shipping crate was damaged, the carrier denied liability.

Appellant testified that he attempted to straighten the dents in the salad case, but that the damage was beyond repair. Consequently, after conferring with the restaurant owner it was agreed to move the salad case from its designed center location to a position alongside the bar. To conceal the damage appellant covered the salad case with formica paneling of a style and grade which matched the paneling covering the bar. This remodeling cost $425. In addition appellant incurred a $545 plumbing expense for installation at the new location.

Mr. Kanoff testified for appellee and denied receiving a phone call from appellant informing him of the display purpose intended for the salad case. He stated that the long delay in responding to appellant's letter of April 1, 1962, was caused by difficulty in making inspection arrangements with the shipper. He estimated that the damage to the salad case could have been

repaired by appellee at a price between $30 and $85 plus transportation costs.

■ Under a breach of contract, whether of warranty or otherwise, a defendant is liable for such damages as are the natural consequence and proximate result of his conduct or which reasonably may be supposed to have been within the contemplation of the parties at the time the contract was made as the probable result of a breach of it. Fries, Beall & Sharp Co. v. Livingstone, 56 App.D.C. 209, 12 F.2d 150 (1926). In this case there was no dispute that the salad case was damaged in several places. Since appellant elected to affirm the contract and sue for damages he could recover the reasonable cost of repairs necessary to restore the salad case to the condition contemplated by the contract. Discount Motor Sales, Inc. v. Shubrooks, D.C.Mun. App., 163 A.2d 818 (1960). While such costs normally would have equaled the cost of replacing the damaged sections, appellant contends that appellee's knowledge of the special circumstances surrounding the order made the remodeling and relocation expenses reasonably foreseeable.

■ Since we are met by a directed verdict for appellee at the close of all the evidence, the general rule regarding the function of the judge and jury when foreseeable contract damages are claimed is applicable. It has been summarized as follows:

"If men could reasonably differ over the objective facts relative to the giving of notice, or over the question whether on the facts thus found the defaulter should, when the contract was made, reasonably have foreseen that such a loss as this would be a result of the breach, then these questions of fact and inference are to be submitted to the jury. If either of these questions is so clear to the mind of the judge that he believes a contrary view would be unreasonable, the judge is to find the fact, or apply the standard himself." [1]

The first question was clearly for the jury since there was a direct conflict in the testimony over whether the phone conversation charging appellee with notice took place. By directing a verdict, the trial judge found that the second question was equally clear in that no reasonable man could conclude that the remodeling and relocation expenses were foreseeable as a result of a breach of the contract.

In Fries, Beall & Sharp v. Livingstone, supra, the plaintiff purchased roofing material from the defendant with a seventeen-year guaranty. Eight or nine months after the material was laid, the roof leaked. The defendant, after notice, failed to repair the defects or honor the guaranty. Thereafter the plaintiff purchased new roofing material of a much higher grade, style and character than that supplied by the defendant and refinished the roof. In his suit for damages plaintiff claimed the cost of the new material. The court, in reversing a verdict for the plaintiff, said:

"Under the rule followed by the court below, a plaintiff might purchase second-grade shingles under a 10-year guaranty, and, finding the roof defective, put on a slate roof at many times the cost. This would penalize the defendant, rather than make good the plaintiff." [2]

As the proper measure of damages the court found that the plaintiff was entitled to recover the cost of roofing material as

1. McCormick, The Contemplation Rule as a Limitation Upon Damages for Breach of Contract, 19 Minn.L.Rev. 497, 510 (1935).

2. Fries, Beall & Sharp Co. v. Livingstone, 56 App.D.C. 209, 211, 12 F.2d 150, 152 (1926).

near the same style, grade, and character specified in the contract as was then procurable.

In Himmelstein v. Budner, 93 F.Supp. 946 (D.D.C.1950), plaintiff sued for breach of an implied warranty under a contract to sell a dry-cleaning business. When plaintiff took possession of the business, defects in the underground machinery prevented the operation of the plant. The defendant-seller, when notified of the defects, made no effort to correct the situation. Plaintiff, therefore, undertook to make the necessary repairs. In his suit for damages plaintiff claimed the expense of sending garments to Baltimore for dry-cleaning while the plant was inoperable, and the expense of substituting dry-cleaning equipment of a different make from that which was on the situs when he purchased the business. The court concluded:

> "* * * the plaintiff is entitled to recover the reasonable cost of correcting the defects in the underground system and other equipment in order to make the plant operable * * * and, in addition, the loss reasonably sustained through having to send garments outside for cleaning * * *. The plaintiff is not entitled to recover for any added cost incurred in putting the plant into operation which was occasioned by his substitution of equipment other than that on the situs at the time of the contract, or for loss sustained through sending garments elsewhere for cleaning during the time the cleaning plant was not in operation due to his substitution of equipment; and in computing damages sustained through sending garments outside for cleaning, the basis for recovery should be the added expense which would have been reasonably incurred in sending such garments to a plant in Washington or the metropolitan area." (Id., at 949.)

■■ In our view these cases stand for the proposition that when a seller delivers goods in a damaged condition pursuant to a contract of sale, and the buyer elects to affirm the contract and sue for damages, the buyer's recovery is limited to the current market value of goods of a similar style, grade, and character as existed in the original article. He may not recover the current market value of additional or substitutional parts which change the grade or quality of the article sold. Applying this rule to the case at bar we hold that remodeling the salad case, by covering it with formica paneling was an addition or substitution which changed the grade or quality of the salad case. Therefore, the cost of the formica paneling was not recoverable. The proper measure of damages was the cost of replacing the dented areas with stainless steel parts.

■ We take a similar view of the plumbing expense. Had appellant replaced the dented areas with stainless steel parts, it is clear that the salad case would have been restored to the condition contemplated by the contract. Therefore, it would have been fit for the intended use as a display piece in the center of the restaurant. Under these circumstances it would have been unnecessary to move the salad case to the new location alongside the bar. We conclude that the additional plumbing expense of $545 was an unreasonable measure of damages.

■ Appellant has urged that even if both the remodeling and relocation expenses are not recoverable, the estimate by Mr. Kanoff of the reasonable cost of replacing the damaged sections was sufficient evidence to require submission of the case to the jury. In support of this position, appellant cites the following language from our recent decision in Greet v. Otis Elevator Company:

> "If a plaintiff has made out a prima facie case, a motion for a directed verdict at the close of plaintiff's evidence should be denied without restriction. The theory or theories upon which the

case is submitted to the jury should be determined at the close of all the evidence because some evidence elicited from defendant's witnesses may be advantageous to plaintiff."[3]

We do not find this language controlling because we find it based on the proposition that the "plaintiff has made out a prima facie case." By failing to offer any evidence of the reasonable cost of repairing the salad case, appellant failed to establish one of the essential elements in making out a prima facie case.

Affirmed.

3. D.C.App., 187 A.2d 896, 897, footnote 1 (1963).