Joseph A. MEYERS and Jack S. Poms,
Appellants,

v.

George ANTONE and Jacqueline Antone,
Appellees.

No. 4006.

District of Columbia Court of Appeals.

Argued Jan. 16, 1967.

Decided March 7, 1967.

Isadore B. Katz, Washington, D. C., for appellants.

George Bronz, Washington, D. C., for appellees.

Before HOOD, Chief Judge, MYERS, Associate Judge, and QUINN (Associate Judge, Retired).

QUINN, Judge.

The controversy before us centers around the following provision contained in a contract of sale for improved realty: "Heating plant to be functioning properly—Entire Unit." The contract was signed in March 1964 and the deed delivered in June of that year. In November appellees (purchasers) first noticed that the boiler leaked. They subsequently sued appellants for breach of warranty and recovered $780, the cost of purchasing and installing a gas heating system on the premises.

In order to render any judgment for appellees, the trial court had to find that there was a warranty; that it survived delivery of the deed; that there was a breach which was not waived; and that notice of the breach was given within a reasonable time. It then had to determine the proper measure of damages. For convenience, we shall deal with the elements of the case in the same order.

Appellants do not argue that the contractual language did not create a warranty. They do contend, however, that all warranties merged into the deed and that a suit on the contract was therefore improper. Their argument is untenable for two reasons. The face of the contract contained the following:

"(16) The principals to this contract mutually agree * * * that the provisions hereof shall survive the execution and delivery of the deed aforesaid and shall not be merged therein; * * *."

In addition, it is settled in this jurisdiction that covenants which are independent of the conveyance of title survive delivery of a deed. Libby v. Trako Builders, 100 U.S.App.D.C. 146, 243 F.2d 252 (1957); Haviland v. Dawson, D.C.App., 210 A.2d 551, 554 (1965). The warranty involved herein was one such independent undertaking.

Turning to the questions of breach and waiver, there is no dispute that when appellees first turned on the heating system in November 1964 they discovered the boiler was leaking. Appellants argue that appellees had both the duty and the opportunity to inspect the premises long before that date, and that by failing to do so they waived any possible breach.

The testimony adduced at trial shows that no inspection of the heating system was made until November although appellees had been given keys to the premises in March. The record also indicates, however, that appellants, who are in the real estate business, had purchased the property two months prior to its sale to appellees; that there was freeze damage to certain pipes and radiators; that they never ascertained whether the heating system was functioning properly; and that the premises were vacant when sold.

■ The warranty in question stated that the heating plant was to be functioning properly. Appellants argue, however, that the risk of loss or damage to the system was on the purchasers after the contract was signed, and that the trial court had to find that a breach had occurred prior to March 1964. Assuming, *arguendo,* that this is a correct statement of the law, we hold that there was sufficient evidence from which the trial court could have found that the system was not in good working order when the contract was signed.

■ On the issue of waiver, the law is clear that a buyer may lose his cause of action for breach of warranty if he fails to notify the seller of the breach within a reasonable time. Campbell Music Co. v. Singer, D.C.Mun.App., 97 A.2d 340 (1953). This necessarily implies that he must inspect within a reasonable time, *i.e.,* a time which would "be sufficient in the case of a man of ordinary intelligence and prudence under the circumstances of the case." P. H. Sheehy Co. v. Eastern Importing & Mfg. Co., 44 App.D.C. 107, 111, L.R.A. 1916F, 810 (1915). The question of reasonable time is ordinarily one of fact, unless all the circumstances lead to but one conclusion. *Campbell Music Co.,* supra. Here, the issue was a factual one, and the record supports the trial court's finding of reasonableness. That finding precluded any argument that the breach had been waived by appellees' acceptance and retention of the system. Furthermore, it was not unreasonable for them to use the system while attempting to secure a replacement since notice had been given and no additional damages were incurred. Such use did not constitute a waiver.

Appellants' final argument is that the trial court erred because it applied the wrong measure of damages. We agree.

The record shows that the heating plant in question was of the coal-converted-to-oil type, and consisted of a boiler, a motor unit and a thermostat. The boiler was estimated to be between twenty-five and forty years old. Subsequent to the breach, appellees installed a new gas heating plant (including thermostat) which had a greater heating capacity than the oil system. The total cost was $780, the amount of the judgment herein.

■ The general rule of damages for a breach of warranty has been variously stated. In Fries, Beall & Sharp Co. v. Livingstone, 56 App.D.C. 209, 12 F.2d 150 (1926), the court recognized that damages were ordinarily measured by the difference between the actual value of the article sold and what it would have been worth had it been as warranted. It further stated that under a breach of contract, whether of warranty or otherwise, the defendant was liable for those damages which were the natural consequence and proximate result of his conduct. The applicable Code provisions contain similar standards and further provide that special circumstances may permit a showing of proximate damages of a greater amount. D.C.Code § 28–1507(6) and (7) (1961); compare D.C.Code § 28:2–714(2) (Supp. V, 1966). Further-

more, we have held that where by reasonable expenditures the goods may be made to conform to the warranty, the cost of such expenditures may be the measure of damages. Morfessis v. Sterling Metalware Co., D.C.App., 193 A.2d 66 (1963); Discount Motor Sales, Inc. v. Shubrooks, D.C.Mun. App., 163 A.2d 818 (1960); see Thompson v. Rector, 83 U.S.App.D.C. 371, 170 F.2d 167 (1948).

■ In the case at bar, the only testimony concerning the boiler was that it had no monetary value. The contract of sale was not apportioned; consequently there was no way to determine what part of the purchase price was applicable to the heating system. There was no showing that anything other than the boiler was faulty. Testimony further showed that used boilers could be obtained from junk yards or plumbers, and that certain of these sources sold them only after they had been tested. Under all the circumstances of this case, we hold that the proper measure of damages was that amount required to make the goods conform to the warranty, i. e., the cost of purchasing and installing a properly functioning used boiler. Whether or not anyone would recommend the installation of such a boiler is immaterial. Appellees were free to substitute a gas system (which they did), change over to forced air heating, or even experiment with a solar heating plant. They could not, however, recover the cost of such systems. They contracted for a used oil system that would function properly, and can neither receive more than they bargained for nor be put in a better position than they would have been had the contract been fully performed. Thorne v. White, D.C.Mun.App., 103 A.2d 579 (1954); Henry J. Robb, Inc. v. Urdahl, D.C.Mun.App., 78 A.2d 387 (1951). The following cases well illustrate this point.

In Clarke v. Cleckley, D.C.Mun.App., 55 A.2d 287 (1947), seller had agreed to fix the leak in the roof and replace a wooden toilet seat. The evidence showed that no new seat was available to fit the existing unit, so the buyer installed a new tank and stool as well as a new seat. We held that the buyer was only entitled to be put in as good a condition financially as he would have been by performance of the contract. Even though a properly fitting seat could not be obtained, his damages were limited to the reasonable cost of one, since that cost could be determined. We also stated that whereas the seller had contracted to fix the leak in the roof, buyer was entitled to a new roof *only because* the uncontradicted evidence showed that the roof could not otherwise be fixed. In the instant case, used boilers were available and appellees' damages must be limited accordingly.

In Thorne v. White, supra, we held that where a contract for a four-ply roof had been breached, the innocent party could not then make a contract for a five-ply roof and collect the difference in cost as damages. In *Fries, Beall & Sharp*, supra, damages were disallowed where plaintiff, in replacing a leaky roof, did not use material of substantially the same style, grade and character as that for which he had originally contracted. In Morfessis v. Sterling Metalware Co., supra, it was shown that certain dented stainless steel parts of a display unit could have been replaced. Plaintiff was not allowed to collect for the cost of remodeling the unit with formica paneling. In the instant case, appellees bargained for a used oil heating system. Although they could replace it with a new and larger gas system, they could not collect the full purchase price and installation cost.

■ To reiterate, since the boiler was the only defective part of the system and could be replaced, appellees' damages are limited to the cost of purchasing and installing a used boiler. Appellants' evidence showed that used boilers cost between ten and $100, and that the cost of installation was between $200 and $250. We therefore find that the maximum appellees could have recovered was $350.

As discussed above, the decision of the trial court requires affirmance on all issues other than damages. It will therefore be affirmed provided appellees, within ten days hereof, file with the trial court a remittitur in the sum of $430; otherwise the said judgment shall be reversed and remanded for further proceedings not inconsistent with the opinion of this court. Such reductions may be made when the computation is reasonably clear from the record. Lalley v. Escoett, 79 U.S.App.D.C. 306, 146 F.2d 667 (1945); Group Health Ass'n v. Shepherd, D.C.Mun.App., 37 A.2d 749 (1944).

Affirmed on condition.