MARINER WATER RENATURALIZER
OF WASHINGTON, INC., Appellant,

v.

AQUA PURIFICATION SYSTEMS,
INC., et al.

No. 79–1715.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 24, 1980.

Decided Sept. 1, 1981.

Thomas A. Rothwell, Washington, D.C., for appellant.

Allen E. Hirschmann, Washington, D.C., for appellees.

Before ROBINSON, Chief Judge, SWYGERT,* Senior Circuit Judge, and WRIGHT, Circuit Judge.

Opinion PER CURIAM.

PER CURIAM:

This case comes before us on appeal from factual findings and legal rulings by the District Court in a bench trial. Appellant, Mariner Water Renaturalizer of Washington, Inc., contends that the court erred in its handling of breach of warranty and misrepresentation claims against appellees Aqua Purification Systems, Inc., Ben Zino, president of Aqua, and George Dunbrook, vice-president, and abused its discretion by refusing to award punitive damages. We find no merit in these contentions.

I

Mariner is a corporation organized primarily to market consumer treatment units designed to improve the quality of tap water. Its incorporators formed the company after extensive discussions with Aqua centering on the purchase and sale of various types of water regulators. This case arose as a consequence of a dispute between Mariner and Aqua concerning the purchase of 250 such regulators.

Although there is some disagreement as to when the transaction was consummated, the District Court found that the units were shipped to Mariner by Aqua on July 9, 1976. Fifty of the units were "AP3" models, and the rest were "AP6" or "AP644" regulators. At the time the shipment was made and accepted, the two companies were involved

* Of the United States Court of Appeals for the Seventh Circuit, sitting by designation pursu-
ant to 28 U.S.C. § 291(a) (1976).

in further negotiations contemplating the possibility that Mariner would become the exclusive distributor of Aqua products in the District of Columbia, Maryland, Virginia, and Delaware areas. The District Court found, however, that no such agreement had been consummated either at the time of the shipment or at any time thereafter.

Mariner's purchase of the water regulators was based principally on Aqua's representation that the units in suit were actually water purifiers—in other words, capable of eliminating all disease-carrying bacteria, as well as distasteful odors and colors, from water supplies. Aqua assured Mariner that these claims could be advertised, but shortly after Mariner began making sales of the regulators it was notified by a Pennsylvania distributor that questions as to the efficacy of the units had been raised by Pennsylvania's Department of Environment.

Following this, Mariner wrote to the federal Environmental Protection Agency (EPA) seeking further information about the units. The nature of the AP3 and AP6 regulators made them "pesticides" required to be registered with EPA pursuant to the Federal Insecticide, Fungicide and Rodenticide Act.[1] Aqua had unequivocally represented to Mariner that both types of units were properly registered as water purifiers. EPA, however, subsequently disclosed that only one model of the Mariner regulators, the AP6, was registered with EPA, and that none of the models completely eradicated or killed disease-carrying bacteria as advertised. Even the registered model was merely classified as "bacteriostatic," the classification for units that inhibit but do not exterminate harmful bacteria.

After receiving this information, Mariner sought reimbursement from Aqua for the purchase price of the units. When this effort proved to be unsuccessful, Mariner filed suit against Aqua in the District Court, seeking rescission and damages on grounds of breach of contract, breach of warranty, and misrepresentation-fraud. The contract claim was dismissed, and the case went to trial on the breach-of-warranty and misrepresentation-fraud theories. The District Court denied all relief for the breach of warranty, and refused to grant rescission for the misrepresentations. The court did, however, award damages—actual but not punitive, and only with respect to the AP3 units—on the basis of the misrepresentations. The factual and legal determinations underlying this disposition are the subjects of this appeal.

## II

In rejecting Mariner's breach of warranty theory, the District Court stated that

[t]he proof fails to show when, if ever, [Mariner] perfected its breach of warranty claim by notifying [Aqua] that the transaction was troublesome as required by U.C.C. § 2–607(3)(a), D.C.Code § 28:2–607(3)(a). In any event, it is clear that whatever notification was given, it was not made promptly. Accordingly, this count of [Mariner's] complaint must fail.[2]

■ Mariner disputes the court's finding on this point, arguing that the time period was within acceptable bounds. The relevant section of the District of Columbia Code[3] defines the limit applicable as follows:

---

1. 7 U.S.C. § 136 et seq. (1976).

2. Mariner Water Renaturalizer of Washington, Inc. v. Aqua Purification Syss., Inc., No. 79–1715 (D.D.C. May 3, 1979) (memorandum opinion), at 3, Joint Appendix (J.App.) 103.

3. This case came before the District Court on the basis of diversity jurisdiction under 28 U.S.C. § 1332 (1976). The doctrine of Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), does not extend to federal courts sitting in the District of Columbia, but we have held that the substantive law of the District,

including its choice-of-law rules, is to be followed analogously. Steorts v. American Airlines, 647 F.2d 194 (D.C.Cir.1981); Tuxedo Contractors v. Swindell-Dressler, 198 U.S.App. D.C. 426, 428–429, 613 F.2d 1159, 1161–1162 (1979); Lee v. Flintkote, 193 U.S.App.D.C. 121, 124 & n.14, 593 F.2d 1275, 1278 & n.14 (1979). The choice-of-law question, however, has not been addressed in this litigation; as in Lee v. Flintkote, supra, "[t]he District Court apparently assumed that District of Columbia law governs the issues presented, and with that the litigants seemed perfectly content." 193 U.S. App.D.C. at 124, 593 F.2d at 1279. For essen-

Where a tender has been accepted (a) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of the breach or be barred from any remedy.... [4]

The cases establish that what, under District of Columbia law, constitutes a "reasonable time" in this context is a question of fact "unless all the circumstances lead to but one conclusion." [5]

■ In the instant proceeding, the District Court found that in late May or early June, 1977, Mariner learned from EPA "that only one model of the Mariner Regulators—the AP6—was registered and that none of the models functioned in a manner that, according to EPA's view of the law and regulations, would justify an advertised claim that the model completely eradicated or killed disease-carrying bacteria." [6] The time interval elapsing between the discovery of this breach of warranty and Mariner's alleged notification of appellees on July 15, 1977,[7] was thus in the neighborhood of five to eight weeks. Given these facts, we can hardly say that the District Court's finding that this time lapse exceeded the bounds of reasonableness was clearly erroneous,[8] especially in light of the high standards by which transactions between merchants are measured under the Uniform Commercial Code.[9] Moreover, Mariner has not alerted us to—nor have we discovered—any authority establishing that five to eight weeks is reasonable as a matter of law in situations such as this one. Consequently, we affirm the District Court's denial of Mariner's breach of warranty claim.

■ We reach the same result with respect to Mariner's efforts to obtain rescission as a remedy for the misrepresentations alleged. As the District Court correctly stated, "[t]he law of the District of Columbia affords the victim of fraud or misrepresentation (in the context of a sale transaction) with an election between two mutually exclusive remedies, rescission of the sale or damages." [10] But the local law also is that "one who seeks to rescind a contract must act within a reasonable time after discovery of the facts justifying rescission.... Determination of what constitutes a reasonable time depends upon the particular facts of the case and ordinarily is a question of fact, though, in extreme cases it may be one of law." [11] Unfortunately for Mariner, the District Court determined that it was precluded from pursuing a rescission remedy because the "election to rescind the sales contract [was made], if at all, long

---

tially the same reasons set forth in *Lee*, see *id.* at 124–125, 593 F.2d 1279–1280, we assume the applicability of District of Columbia law in this case.

4. D.C.Code § 28.2–607(3)(a) (1973). See also, e.g., *Meyers v. Antone*, 227 A.2d 56, 58 (D.C. App.1967).

5. *Meyers v. Antone, supra* note 4, 227 A.2d at 58; *Campbell Music Co. v. Singer*, 97 A.2d 340, 341 (D.C.Mun.App.1953).

6. *Mariner Water Renaturalizer of Washington, Inc. v. Aqua Purification Syss., Inc., supra* note 2, at 2–3, J.App. 102–103.

7. See note 13 *infra*.

8. See Fed.R.Civ.P. 52(a).

9. See 1 R. Anderson Uniform Commercial Code § 2–104.3 (1970).

10. *Mariner Water Renaturalizer of Washington, Inc. v. Aqua Purification Syss., Inc., supra* note 2, at 3, J.App. 103. See, *e.g.*, *Sankin*

*v. 5410 Connecticut Ave. Corp.*, 281 F.Supp. 524, 547 (D.D.C.1968), *aff'd sub nom. Benn v. Sankin*, 133 U.S.App.D.C. 361, 410 F.2d 1060, *cert. denied*, 396 U.S. 1041, 90 S.Ct. 681, 24 L.Ed.2d 685 (1970); *Millard v. Lorain Inv. Corp.*, 184 A.2d 630, 632 (D.C.Mun.App.1962).

This is simply an election of remedies. Failure to act promptly may foreclose a party from rescinding the contract but, unless long enough to drop the bar of the statute of limitations, does not affect the availability of damages. In this respect, a misrepresentation claim differs from one for breach of warranty, which is lost by unreasonable delay. See text *supra* at note 2.

11. *Cummings v. Jack Hurwitz, Inc.*, 204 A.2d 332, 333 (D.C.App.1964) (citations omitted). See also, *e.g.*, *Dravillas v. Vega*, 294 A.2d 363, 365 n.2 (D.C.App.1972); *Talley v. Campbell Music Co.*, 219 A.2d 852, 854 (D.C.App.1968); *Campbell Music Co. v. Singer, supra* note 5, 97 A.2d at 341.

after any reasonable notice period had passed." [12]

In this instance, discovery of the facts justifying rescission took place at the same time the breach of warranty was uncovered—late May or early June, 1977, when EPA disclosed the actual registration status of the water purification units sold to Mariner. Once again we perceive no reason to overturn the District Court's finding that the time interval in question was unreasonable. As was true with respect to the breach of warranty claim, Mariner has not presented us with—and we have not found—any authority in this jurisdiction establishing that a five-week to eight-week period is reasonable as a matter of law for purposes of an election to rescind. Accord-

ingly, we affirm the District Court's holding that Mariner's claim of entitlement to rescission as a remedy for misrepresentation must fail.[13]

■ We are equally convinced that Mariner's objections to the District Court's treatment of its damage claims with respect to the alleged misrepresentations are without substance. We do not accept the contention that the court improperly imposed upon Mariner a duty to mitigate damages comparable to the obligations incumbent upon plaintiffs in breach of contract actions.[14] It is apparent to us that the District Court held against Mariner on this issue on the basis of the well-settled rule that claims sounding in misrepresentation or fraud require proof of damages as an

12. *Mariner Water Renaturalizer of Washington, Inc. v. Aqua Purification Syss., Inc.,* *supra* note 2, at 4, J.App. 104.

13. In addition to its substantive objections to the District Court's decision, Mariner advances two procedural contentions. The first centers on the question whether the fact of actual notice was established by the pleadings, therefore obviating the need for proof of notice at trial. The genesis of this argument is an allegation in Mariner's amended complaint that "on or about July 15, 1977 [Mariner] requested in writing that [Aqua] make restitution for the cost involved in the purchase of Aqua's products...." Amended Complaint ¶ 8, J.App. 741c. This averment was admitted by appellees. Answer of Defendant Aqua Purification Systems, Inc. to Amended Complaint at ¶ 8, J.App. 34 [hereinafter cited as Aqua Answer]; Answer of Defendant Zino to Amended Complaint ¶ 8, J.App. 60 [hereinafter cited as Zino Answer]. Both defendants, however, denied that Mariner had offered to return the units, as also alleged in the amended complaint. Compare, Amended Complaint, *supra*, ¶ 8, J.App. 741c with Aqua Answer, *supra*, ¶ 8, J.App. 34, and Zino Answer, *supra*, ¶ 8, J.App. 60.

Mariner correctly states that ordinarily an admission that notice was given would establish that as a fact, without the necessity of proof. At the trial of this case, however, evidence was admitted, without objection, in the form of testimony by Mariner's president, that arguably was in direct conflict with the allegation of notice in the amended complaint; Indeed, this testimony was given in the course of direct examination by Mariner's counsel. J.App. 776–777. In such circumstances, the trier of fact is free to consider the actual proof in addition to the pleadings, as the trial judge

clearly did here. See text *supra* at notes 2, 12. *Cf.* 8 C. Wright & A. Miller, Federal Practice 2264 (2d ed. 1979) (admissions are not binding on the party securing them).

In any event, the District Court did not ultimately rest its holding with respect to either cause of action on lack of notice, but on a failure to provide *timely* notice. See text *supra* at notes 2, 12. Mariner argues, however, that litigation of the question of timeliness was likewise unnecessary because, it says, receipt of timely notice was not specifically denied by appellees in their responsive pleadings in accordance with the requirements of Fed.R.Civ.P. 9(c) which provides that

[i]n pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred. A denial of performance shall be made specifically and with particularity.

Mariner appears to have overlooked the fact that Aqua specifically raised as a defense in its answer to the amended complaint the claim that "[p]laintiffs' [*sic*] failed to timely revoke their acceptance of the goods purchased." Aqua Answer, *supra*, at 2, J.App. 20. Additionally, neither Mariner's original nor its amended complaint contained any allegation that all conditions precedent had been performed. In the absence of a general averment of this nature, a high level of prevision is mandatory for particular allegations of performance of conditions precedent, something that may well be lacking in this case. See generally, 5 C. Wright & A. Miller, *supra*, at § 1303.

14. See *Mariner Water Renaturalizer of Washington, Inc. v. Aqua Purification Syss., Inc.,* *supra* note 2, at 4, J.App. 104.

element of the cause of action.[15] Moreover, the measure of damages for misrepresentation of goods sold is the difference between the value of the goods as represented to the buyer and the worth of those he actually received.[16] In this case, the District Court awarded damages for misrepresentation with respect to the AP3 units, but found itself unable to determine damages related to the AP6 units because Mariner had

> made no effort to show, to any degree of reasonable certainty, the price at which the AP6's could have been sold under truthful advertising. Since the units were registered, they could have been lawfully marketed so long as consumers were told they were "bacteriostats." As such, the units were highly efficacious and surely saleable.[17]

We find no error in the District Court's refusal to allow damages where none had properly been proved.

■■■ We reach a similar conclusion with respect to Mariner's remaining damage claims. The District Court denied compensatory damages because of inadequate proof; for example, they were not particularized, or they were sustained by nonparties, or came about after Mariner's discovery that the AP6's were not properly registered.[18] Expenses which Mariner sought as consequential damages, the court found, were incurred as a result of a "vain anticipation" on Mariner's part "that it would consummate a long-term distribution dealership with [Aqua]."[19] We agree with the District Court that these losses also are unrecoverable. Mariner has not demonstrated that Aqua made any misrepresentation with respect to a possible dealership arrangement, and "[i]t is only where the fact misstated was of a nature calculated to bring about the result that damages for it can be recovered."[20]

■■■ Finally, we turn to the issue of punitive damages.[21] The District Court found that "the proof unequivocally establishes that [appellees] knew that their statements were false, yet they nonetheless repeatedly and prominently made them knowing that they concerned a material fact and that [Mariner] was detrimentally placing reliance on them."[22] Still, we are not convinced that it would be appropriate for us to order the District Court to impose punitive damages. Under the law of the District of Columbia, such damages are disfavored, and their award is within the sound discretion of a trial court that is sitting without a jury.[23] The conduct complained of must, for example, be "willful and outrageous,"[24] constitute "gross fraud,"[25] or be "aggravated by 'evil motive, active malice, deliberate violence or oppression.'"[26] While the instant misrepresentation seems willful, the record is not so strong as to

15. See W. Prosser, The Law of Torts § 100 (4th ed. 1973).

16. Espaillat v. Berlitz Schools of Languages, Inc., 127 U.S.App.D.C. 293, 295, 383 F.2d 220, 222 (1967); Kent Homes, Inc. v. Frankel, 128 A.2d 444, 445 (D.C.Mun.App.1957); Hirshon v. Whelan, 122 A.2d 114, 115 (D.C.Mun.App. 1956). We note that the District of Columbia follows the so-called "out of pocket" rule. See generally, W. Prosser, supra note 15, at § 105.

17. Mariner Water Renaturalizer of Washington, Inc. v. Aqua Purification Syss., Inc., supra note 2, at 4, J.App. 104.

18. Id. at 5, J.App. 105.

19. Id.

20. W. Prosser, supra note 15, at § 105.

21. The basis of the District Court's ruling on punitive damages is an oral statement at trial. J.App. 910, 914, 932.

22. Mariner Water Renaturalizer of Washington, Inc. v. Aqua Purification Syss., Inc., supra note 2, at 4, J.App. 104.

23. United Sec. Corp. v. Franklin, 180 A.2d 505, 511 (D.C.Mun.App.1962); Riss & Co. v. Feldman, 79 A.2d 566 (D.C.Mun.App.1951).

24. Spar v. Obwoya, 369 A.2d 173, 180 (D.C. App.1977); Harris v. Wagshal, 343 A.2d 283, 288 (D.C.App.1975).

25. Spar v. Obwoya, supra note 24, 369 A.2d at 180; Franklin Inv. Co. v. Homburg, 252 A.2d 95, 98 (D.C.App.1969).

26. Price v. Griffin, 359 A.2d 582, 589 (D.C.App. 1976), quoting Black v. Sheraton Corp., 47 F.R.D. 263, 271 (D.D.C.1969).

persuade us that the District Court abused its discretion in denying punitive damages.[27]

Mariner thus encounters insuperable obstacles at every critical point. We are sympathetic to its plight, but the outcome is clear. For the reasons stated, the judgment appealed from is

*Affirmed.*

----

**27.** Moreover, the record is somewhat unclear as to the nature and extent of the willfulness of ·appellees' conduct. See J.App. 949.